## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**POINDEXTER PARK AFTER-SCHOOL CLUB, INC.,
CHARLES JORDAN, WILLIAM S. KELLUM,
AND BELINDA CHASE, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED**                                  **PLAINTIFFS**

**V.**                                     **CIVIL ACTION NO.:**  3:19-cv-474-CWR-LRA

**SIEMENS  INDUSTRY, INC.**                                   **DEFENDANT**

### CLASS ACTION COMPLAINT

### (JURY TRIAL DEMANDED)

PLAINTIFFS Poindexter Park After-School Club, Inc., a non-profit corporation organized and existing under the laws of the State of Mississippi Belinda Chase, William S. Kellum and Charles Jordan, by and through undersigned counsel of record, file this Class Action Complaint, individually and on behalf of all others similarly situated, against Siemens Industry, Inc., a corporation organized and existing under the laws of the State of Delaware, as follows.

1.     Plaintiff Poindexter Park After-School Club, Inc., is a non-profit corporation organized and existing under the laws of the State of Mississippi. It may be served with pleadings and papers of this Court by service upon its undersigned counsel of record. Relevant to the subject matter of this action and the jurisdiction of this Court, Poindexter Park After-School Club, Inc., operates an after-school child care and tutoring facility located at 1025 Central Street, Jackson, Mississippi, 39203; and Poindexter Park After-School Club, Inc., receives and has received at all times relevant to this Complaint water and sewer services from the City of Jackson, and is the ratepayer for said services at said location for all times relevant to this Complaint.

2.     Plaintiff Belinda Chase is an adult resident citizen of the City of Jackson, Hinds County, Mississippi.  Plaintiff Chase has received at all times relevant to this Complaint water and sewer services from the City of Jackson, and is the ratepayer for said services at her home location for all times relevant to this Complaint.

3.     Plaintiff William S. Kellum is an adult resident citizen of the City of Jackson, Hinds County, Mississippi.  Plaintiff Kellum has received at all times relevant to this Complaint water and sewer services from the City of Jackson, and is the ratepayer for said services at his home location for all times relevant to this Complaint.

4.     Plaintiff Charles Jordan is an adult resident citizen of the City of Jackson, Hinds County, Mississippi.  Plaintiff Jordan has received at all times relevant to this Complaint water and sewer services from the City of Jackson, and is the ratepayer for said services at his home location for all times relevant to this Complaint.

5.     Plaintiffs file this Complaint individually and on behalf of the putative class of all persons, both real and fictional, who have received water services by the City of Jackson, and/or who have been billed for such services, or have paid for any such services, from the effective date of commencement of performance of a certain contract for services executed by and between the City of Jackson and Defendant Siemens Industry, Inc., through the present, as recited herein. Plaintiffs and all other persons comprising the putative class of Plaintiffs in this action are the intended or implied third-party beneficiaries of said contract for services; as such, in addition to any other duties owed by Defendant Siemens Industry, Inc., as recited herein or to be shown after a reasonable opportunity for discovery in this matter, Plaintiffs hold standing as real parties in interest to file this Complaint.

6.     Defendant Siemens Industry, Inc., is a corporation organized and existing under the laws of the State of Delaware, and with its principal place of business found in the State of Georgia at 3333 Old Milton Parkway, Alpharetta, Georgia 30005.  Defendant Siemens Industry, Inc., may be served with process of this Court by service upon its registered agent for service of process, C.T. Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi, 39232.

7.     This Court has jurisdiction over the subject matter of this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

8.     Plaintiffs allege that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2) and (5). As set forth herein, Plaintiffs are citizens of the State of Mississippi, and Defendant Siemens Industry, Inc., is a citizen of the States of Delaware and of Georgia. Accordingly, diversity of citizenship exists under CAFA and diversity jurisdiction, as required by 28 U.S.C. §§1 332(a)(1) and (d)(2)(A). Furthermore, Plaintiff alleges on information and belief that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of the State of Mississippi, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. §1332(d)(5)(B).  Plaintiff accordingly seeks class certification and would show that such certification is proper pursuant to Fed. R. Civ. Pr. Rule 23.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant has conducted business in this District, maintains an office in this District, and the performance of the duties assumed by Defendant all occurred or were to occur in this District.

10.     As with every other resident of the City of Jackson and every corporation or other business entity located in or having offices in the City of Jackson, Plaintiffs in general and Poindexter Park in particular receive water and sewer services from the City of Jackson through its water and sewer authority. As a childcare facility licensed by the Mississippi State Department of Health, Poindexter Park is required to maintain hot and cold running water, working toilets, and hand washing facilities at all times as a condition of its continuing licensure. Further, Poindexter Park charges the students to whom it provides services no fees, and is fully self-sustaining through private donations. Any and all operating budgets are accordingly drawn with a weather eye to all foreseeable expenses, specifically including overhead costs of operation such as utilities. Poindexter Park has accordingly been directly and proximately harmed by the tortious and otherwise wrongful conduct of Defendant, including inaccurate and inflated billing and service interruptions caused by Defendant's multiple breaches and failure to perform services regarding the repair and upgrade of the water infrastructure intended to or having the effect of improving delivery of water and sewer services to residents of the City of Jackson and thereby benefiting Poindexter Park and all other ratepayers.

11.     On or about January 1, 2013, Defendant Siemens Industry, Inc., through its officers and agents, entered into a contract with the City of Jackson. Pursuant to the terms of said contract, Defendant Siemens Industry, Inc., undertook numerous responsibilities to be discharged over the course of a multi-year performance agreement with respect to the implementation and remediation

of the City of Jackson's provision of water and sewer services and billing services to its residents and those residents of outlying municipalities in Hinds County, Madison County and Rankin County, Mississippi, who had formed interlocal agreements with the City of Jackson's water and sewer authority for the provision of those same services. Pursuant to that agreement, Defendant's responsibilities included but were not limited to extensive infrastructure repairs and upgrades; the replacement of obsolete individual water meters with state-of-the-art technology; and the implementation of updated automated billing services. The City later discovered, however, that Siemens manipulated the contracting process and purportedly provided illusory guarantees to the City in order to secure the contract. See, *City of Jackson v. Siemens Industry, Inc., et al.,* Hinds County Circuit Court Cause Number 19-375.

12.     The stated intent of the agreement, as reported in numerous media outlets, was to repair and improve the City's aged water service infrastructure and to streamline and make more effective the billing and collections services. It was the stated intent all times, both in the agreement as executed and as reflected by public statements by the City of Jackson, that the services and hardware implemented by Defendant would result in more accurate and timelier billings to ratepayers which would accurately reflect the actual water consumption of said ratepayers. The ratepayers of the City of Jackson's water and sewer authority, including but not confined to Plaintiffs herein, were and are the intended third-party beneficiaries of the contract formed between the City of Jackson and Defendant.

13.     Siemens' representatives pitched the Siemens project to the City as an energy performance contract.   Energy performance contracts are subject to public contracting requirements and are regulated by the State of Mississippi through the Mississippi Development Authority ("MDA"). Despite presenting its project as an energy performance contract however,

Siemens created a contract structure that fails to deliver the guaranteed energy performance and savings promised by Siemens and required by law for such regulated contracts.

14.     The City and Siemens entered into what was called the Performance Contracting Agreement (the "Agreement"), dated January 30, 2013, but signed by Mayor Harvey Johnson on December 28, 2012. The Agreement was amended four times to address specific issues. Id. at ¶ 29.  Knowing the City lacked the technical expertise to evaluate fully Siemens' proposal, Siemens was able to effectuate a "bait-and-switch" that fell short of a true energy performance contract with guaranteed savings and revenue that would pay for the cost of the project. Id. at ¶ 33.

15.     The City approved the Siemens project based on Siemens' representations regarding Siemens' EBO plan commitments.   Instead of abiding by its promise to hire minority-owned businesses to perform 58% of the $90 Million contract, Siemens used unqualified, sham subcontractors based on their political connections and influence to carry out a pass-through scheme that ultimately cost the City millions of dollars in inflated costs for an already overpriced water system. Id. at ¶ 40.

16.     The Siemens project was plagued by technical problems from the start. Again, the City alleged in its lawsuit that Siemens, among other issues, installed incorrectly or did not satisfy the required specifications for more than half of the 60,000 water meters, causing delays in the project and problems with accurately measuring and billing for water usage by account holders. Id. at ¶ 41.  The entire project was delayed in early 2015 when the City discovered that Siemens had installed meters that read in gallons instead of the appropriate cubic-feet reading. Id. at ¶ 41. Shortly after the new billing system went live in 2015, the City began to accumulate a backlog of thousands of "stranded bills" which continues to grow. The billing system has caused many account holders to receive inexplicably high bills that do not reflect their actual water usage. In

other instances, account holders may receive no bill at all for significant periods of time, only to eventually receive an unusually high bill based on months of purported water usage. These issues have caused account holders to contest bills or lack the ability to pay them. Billing and measurement problems continue to this day. The City estimates that at least 10,000 of the 60,000 new meters are not functioning correctly, resulting in numerous unpaid accounts and water usage that is not accurately captured. Id. at ¶ 42.

17.     The City alleged in its lawsuit against Siemens that more than half of the 60,000 water meters were installed incorrectly, causing delays in the project and chronic, ongoing problems with accurately measuring and billing for water by the City's account holders. The billing system was not set up appropriately to address the thousands of acknowledged faulty meter readings, which resulted in accounts becoming "stranded" in the system. "To this day, the metering system has repeatedly generated grossly inaccurate bills and, in some instances, failed to generate bills at all. It is estimated that 10,000 of the 60,000 meters installed by Siemens are not functioning correctly." Id. at ¶ 19.

18.     Further, the City acknowledged on June 13, 2018 when it entered Amendment Number 4 to the original Siemens Agreement that the Customer Care Billing System (CC&B) and an Automatic Metering System was a complete failure.  See Cause Number 19-375 [DOC.] 2, Exhibit 4 to the Siemens Agreement (Amendment 4).  Amendment 4 required Siemens to provide support services for the CC&B System and an Automatic Metering System via subcontractor Origin. It requires Siemens to engage contractors to provide services relative to the CC&B System including:

(1)   remediation of up to 21,000 stranded bills;

(2)   assess the City's operations;

(3)  gain insight into existing City technical issues.

It also required Siemens to provide Automatic Metering System support via subcontractor, Pedal Valve, Inc., including:

(1)  Daily Field Activity Support;

(2)  MiNet/CC&B  alignment support;

(3)  Client installed meter programming;

(4)  Meter Mitigation Support

It further required Siemens to provide AMI and MiNET Services via subcontractor, Mueller Systems, including:

(1)  Software maintenance, hosting, support;

(2)  Hardware maintenance and support;

(3)  Daily MiNet support;

(4)  Daily MiNode maintenance;

(5)  Collector and repeater maintenance.

Finally, Amendment 4 required Siemens to provide project management oversight of its subcontractors, their activities, performance and schedule for a fixed six (6) month term.  Id. at Page 10.

19.    Upon the execution of  Amendment 4 in June 2018, the City had direct knowledge that the water billing system did not produce accurate bills and the water system overall failed to function as intended. Yet, the City did not convey this information to its account holders, deciding instead to continue water disconnections premised on flawed data.  While the City concedes that the water meter system does not work, the City is still issuing water bills that are grossly inaccurate and, many times, suspending service to account holders to fail to pay the balance of their inaccurate

accounts.  Plaintiffs request, pursuant to M.R.E. 201 and other applicable authority that the Court take judicial notice of the facts publicly available referenced herein. In addition to judicial notice, Plaintiffs will present specific factual testimony.

20.     Plaintiff/Account Holder William S. Kellum suddenly received an unexplainable balance of over $10,000.00 on his account, after having monthly water bills that averaged $100.00 a month for many years prior to installation of the new meters.  A plumber confirmed that he had no leaks.  He recently made a $100 payment to keep his services from being suspended and is in the process of appealing this bill to the Jackson City Attorney. The term "unexplainable balance" means the account holder does not know how the City calculated the inaccurate balance on their account.

21.     Plaintiff/Account Holder Belinda Chase has an unexplainable account balance of over $9,000.00. Ms. Chase's water bill spiked to over $9,000.00 after having been less than $100.00 monthly over many years. When Ms. Chase complained to the City, she was told that she had a water leak.  However, a plumber was not able to find any leak whatsoever.  She now pays $180.00 a month over and above her normal usage to pay off the unexplainable account balance that she received.

22.     Plaintiff/Account Holder Charles Jordan has an unexplainable balance of over $4100.00. After receiving bimonthly water bills that averaged $50.00 for many years, Mr. Jordan's water bill suddenly ballooned to $4100.00, after installation of the new meters.  Mr. Jordan was forced to pay $1100.00 to have his water service restored and now pays an extra $83.00 a month to pay off the balance.

23.     Plaintiff/Account Holder Poindexter Park After-School Club, Inc. has been receiving unexplainable balances into the thousands of dollars since the implementation of the new

water billing system.  At this point, the operators of Poindexter Park have given up on receiving an accurate bill from the City of Jackson and pay a monthly usage rate equal to the pre-Siemens average of their monthly water bill.

24.     Plaintiffs are also aware of individuals who had unexplainable billing balances and water service disconnected and who have been forced to enter into large monthly payment plans to pay off false, inaccurate and/or inflated water usage balances.

## CLASS ACTION ALLEGATIONS

25.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) as representatives of a class defined as follows:

> All persons, both real and fictional, who have received water services from the City of Jackson, and/or who have been billed for such services, or have paid for any such services, from the effective date of commencement of performance of a certain contract executed by and between the City of Jackson and Defendant Siemens Industry, Inc., through the present.

26.     The following persons and entities are excluded from the proposed Class: federal government entities, Defendant, Co-Conspirators, and any of their subsidiaries, predecessors, officers, or directors.

27.     There are tens of thousands of members in the Class; joinder of the absent class members is impracticable.

28.     Plaintiffs' claims are typical of those of the Class.

29.     Plaintiffs and all members of the Class were injured by the same unlawful conduct, which resulted in their receiving inaccurate and inflated billing and service interruption

30.     Plaintiffs will fairly and adequately protect and represent the interests of Class. The interests of the Plaintiffs are not antagonistic to the Class.

31.     Questions of law and fact common to the members of the Class predominate over

questions, if any, that may affect only individual members because Defendant have acted and

refused to act on grounds generally applicable to the class members.

32.     Questions of law and fact common to the Class include:

(a) Whether Defendant breached its contract with the City of Jackson;

(b) Whether Defendant was negligent in its execution of its contract with the City of Jackson;

(c) Whether Plaintiffs were third party beneficiaries of the contract between Defendant and the City of Jackson;

(d) Whether Defendant knew or should have known and concealed that the water meters it provided were not identical or in any way an acceptable or equivalent substitute for the water meters required under the contract;

(e) Whether the Defendant knew or should have known and concealed that the software it sold for the purpose of streamlining the billing system was defective;

(f) Whether the Defendant knew or should have known and concealed numerous other deficiencies in the structural and software elements of the systems it was providing the City of Jackson;

(g) What is the proper measure of damages for each plaintiff.

33.     Plaintiffs are represented by counsel who are experienced and competent in the

prosecution of complex class action antitrust and unfair competition litigation.

34.     Class action treatment is a superior method for the fair and efficient adjudication

of the controversy in that, among other things, such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the unnecessary duplication of effort and expense that numerous

individual actions would engender. The benefits of proceeding through the class mechanism,

including providing injured persons or entities with a method for obtaining redress for claims that

might not be practicable for them to pursue individually, substantially outweigh any difficulties

that may arise in management of this class action.

## CAUSES OF ACTION

## COUNT I: BREACH OF CONTRACT

35.　　Plaintiffs incorporate and reallege each and all allegations recited above as if recited in full herein.

36.　　At all relevant times, Defendant undertook specific and detailed obligations as to the implementation, reconciliation, and installation of infrastructure, hardware and operations software and procedures pursuant to the contract with the City of Jackson.  At all relevant times, Defendant's performance or non-performance of its contracted duties was intended to and did have the effect of affecting all Plaintiffs and the class of all ratepayers with respect to their receipt of water services whether any bill received for said services were timely and accurate. The performance, vel non, of Defendant's obligations had the intended and implied effect of conferring benefits upon Plaintiffs and the putative class. Named Plaintiffs and the putative class of all Plaintiffs as referenced herein are accordingly the intended third-party beneficiaries of the contract formed by Defendant with the City of Jackson, and accordingly have the right as a matter of law to seek remedies for the breach of Defendant's performance.

37.　　At all relevant times, Defendant Siemens Industry, Inc., held multiple obligations as referenced and alleged herein pursuant to its contract as to the provision of water services and the timely and accurate billing for those services. Defendant failed to perform its obligations and is in breach of the contract.

38.　　At all relevant times, Plaintiffs have suffered harm as a direct and proximate result of Defendant's failure of performance in the form of foreseeable consequential damages, including but not limited to overpayment for water services and economic losses directly and approximately caused by the loss of reliable water services through   Defendant's failure to properly address

critical infrastructure failings in breach of its contractual obligations to repair and update the City's water and sewer system, and   by repeatedly and upon multiple occasions being forced to dispute inaccurate overbillings incurred as a result of Defendant's breach of its obligations. Plaintiffs accordingly seek recovery for their consequential damages incurred as a proximate result of Defendant's multiple breaches.

39.    Plaintiffs accordingly request that this Court award them compensation for their damages in an amount that is in the aggregate in excess of $5,0000,000.00 and in a precise amount to be proven at trial.

## COUNT II: NEGLIGENCE

40.    Plaintiffs incorporate and reallege each and all allegations recited above as if recited in full herein.

41.    At all relevant times, Defendant affirmatively undertook numerous obligations owed to the ratepayers of the City of Jackson's water and sewer authority, including but not limited to the Plaintiffs named herein.   Those obligations included the duty to install numerous infrastructure and hardware components such as, but not necessarily limited to, water delivery and drainage mains and pipes and the installation of properly working water meters in a functioning and workmanlike   condition.   Defendant further undertook the obligation and accordingly held the duty to inspect all components of the water delivery system as installed, upgraded and maintained to ensure that those components, including but not limited to water mains and water meters, were functioning properly as intended. Defendant accordingly held and holds an ordinary duty of care to the ratepayers of the City of Jackson water and sewer authority, including but not limited to the Plaintiffs named herein.

42.    At all relevant times, Defendant knew or should have known that the deficient performance of its obligations to Plaintiffs and all ratepayers of the City of Jackson's water and sewer authority would foreseeably result in the interruption of water services and in the inaccurate overbilling to ratepayers without effective recourse to said ratepayers for delivery of water and sewer services. Despite that knowledge, Defendant negligently breached its duty of ordinary care owed to Plaintiffs. As a proximate result of Defendant's tortious and negligent breach, Plaintiffs have suffered direct and foreseeable damages, including but not limited to foreseeable economic losses in the form of inaccurate overbillings and the cost and expense of disputing and resolving said inaccurate overbillings as recited herein. Plaintiffs have further incurred proximate and foreseeable damages in the form of unreasonable interruptions to the provision of necessary water services that would not have occurred but for Defendant's negligent breach of its ordinary duty of care.

43.    Plaintiffs accordingly request that this Court award them   compensation for them damages in an amount that is in the aggregate in excess of $5,0000,000.00 and in a precise amount to be proven at trial.

## COUNT III: FRAUD AND FRAUDULENT CONCEALMENT

44.    Plaintiffs incorporate and reallege each and all allegations recited above as if recited in full herein.

45.    At all relevant times, Defendant, by and through its agents, officers, and assigns, knew or should have known that the water meters were not identical to or in any way an acceptable or   equivalent substitution for the contracted meters which were to be installed pursuant to the terms of its contract with the City of Jackson. Further, at all relevant times Defendant, by and

through its agents, officers, and assigns, knew or should have known that said meters were obsolete and defective.

46.     At all relevant times, Defendant actively concealed its knowledge that said water meters were nonconforming.  At all relevant times, Defendant represented to the City of Jackson and to the public at large, including but not limited to named Plaintiffs and the putative class of all ratepayers as referenced herein, that the water meters as installed conformed with the terms and provisions of its contract with the City of Jackson and performed as intended.

47.     At all relevant times, Defendant knew or should have known that the software it sold to the City of Jackson and as installed for the stated purpose of streamlining billing services and providing accurate and timely billing services was defective and did not and would not perform as represented or conform to the requirements either of the needs of the infrastructure and billing system or to the specific terms of the contractual obligations of Defendant. Defendant actively concealed both its knowledge as to said defects and the nature of said defects. At all relevant times, Defendant actively represented to the City of Jackson and to the public at large, including but not limited to named Plaintiffs and the putative class of all ratepayers as referenced herein, that said software systems did conform to the requirements as stated by the City of Jackson with the intended purpose of improving collections and providing accurate and timely billing services.

48.     Defendant deliberately concealed or suppressed numerous material facts relevant to the defective implementation of the structural and software elements of the water and sewer system; and Defendant had knowledge of these numerous material facts. These material facts were not within the reasonably diligent attention, observation, and judgment of Plaintiffs. Defendant suppressed or concealed these material facts with the intention that Plaintiffs be misled as to the true condition of the numerous and nearly uncountable defects of Defendant's performance as to

the defective software and  hardware so installed. At all relevant times Defendant had no intention of performing its duties; and at all relevant times Defendant worked to conceal its intent to render substandard and shoddy performance. At all times Plaintiffs and the public at large were reasonably misled as to Defendant's performance, as no material facts were within the possession of the public at large except through the disclosure of Defendant. Plaintiffs have suffered damages as a proximate and foreseeable result of Defendant's fraudulent concealment of the numerous and myriad defects of its performance.

49.     Defendant accordingly should be held fully liable for its fraudulent acts and its fraudulent  concealment of any and all material facts. Plaintiffs accordingly request that this Court award them compensation for their damages in an amount that is in the aggregate in excess of $5,0000,000.00 and in a precise amount, to be proven at trial.

## COUNT IV:  VICARIOUS LIABILITY OF DEFENDANT

50.  Plaintiffs incorporate and reallege each and all allegations recited above as if recited in full herein.

51.     At all relevant times, upon information and belief, Defendant Siemens Industry, Inc., delegated its duties assumed pursuant to its contract with the City of Jackson to its officers, employees, agents and/or assigns throughout the time period from the date performance of those duties was to begin through the present.

52.     Defendant, as the principal for its agents as recited herein, was and is vicariously liable for the harm incurred by the tortious acts of its officers, employees, agents and/or assigns committed   within the course and scope of their duty to Defendant and/or with the intent of benefitting Defendant or advancing its interest.

53.     Plaintiffs accordingly seeks damages for any and all harms proximately caused by any and all persons for which Defendant is or may be vicariously liable in this matter. Plaintiffs accordingly request that this Court award them compensation for their damages in an amount that is in the aggregate in excess of $5,0000,000.00 and in a precise amount to be proven at trial.

## COUNT V: INJUNCTIVE RELIEF AND SPECIFIC PERFORMANCE

54.     Plaintiffs incorporate and reallege each and all allegations recited above as if recited in full herein.

55.     At all relevant times, Defendant Siemens Industry assumed specific duties and obligations pursuant to its agreement with the City of Jackson as to the provision and installation of key infrastructure and software components  of the delivery of water and sewer systems and the billing and collection of monies owed by the ratepayers of the City of Jackson, including but not confined to the named Plaintiffs herein and the putative class of all persons who are or have been ratepayers during the subject time period relevant to this lawsuit.   Said duties and obligations include but are not confined to the installation of up-to-date and correctly calibrated water meters and the implementation of billing and collections software and procedures intended to and represented by Siemens Industry as being fully accurate and having the effect of providing regular, monthly billing statements and notifications to Plaintiffs and all persons similarly situated as referenced herein.

56.     As referenced herein and as alleged in this Complaint, Defendant Siemens industry has utterly failed to fulfill those duties and obligations. As a direct and proximate result of Defendant Siemens   Industry's wholesale failure to so fulfill said duties and obligations, Plaintiffs and all other persons similarly situated have suffered the loss of reliable water services and have received grossly inaccurate billing statements and demands for collection based upon those grossly

inaccurate billing statements. As referenced herein, the City of Jackson continues to suffer multiple catastrophic water failures, including water and sewer main breaks, which have directly impacted Plaintiffs' ability to conduct their ordinary activities and have disrupted them ordinary day-to-day affairs. Likewise, the City of Jackson continues to send inaccurate, in many cases grossly inflated, and untimely billing statements to its ratepayers, including Plaintiffs and those persons similarly situated as referenced herein, and issues   demands for collection and shutoff notices which are based upon inaccurate data as collected by the manifestly defective system installed and implemented by Defendant.

57.     Due to the wholesale multiple breaches of its duties as alleged and referenced herein, Plaintiffs and all other persons similarly situated have continued to suffer damages and injuries as referenced throughout this Complaint, and Plaintiffs anticipate such injuries to continue to occur unless and until such time as Defendant is required and enjoined to take such actions as are necessary and proper to prevent such proximately foreseeable future injuries from occurring. The ability to remedy such failures lies wholly within the responsibility of Defendant.

58.     Plaintiffs are accordingly entitled to equitable relief. Plaintiffs accordingly request that this Court issue an Order enjoining Defendant to make such remedies, including recalibration, reinstallation, and repairs, of all defective systems and components, including defective or non-conforming water meters and all defective or non-conforming software systems, for which Defendant was and remains responsible, and further ordering Defendant to deliver specific performance of those duties and obligations as to the installation, repair and implementation of said systems.

## COUNT VI:    PUNITIVE DAMAGES AND ATTORNEYS' FEES

59.    Plaintiffs would show that Defendant's multiple breaches of duty constitute intentional, fraudulent and/or grossly negligent  conduct warranting an award of punitive damages. Plaintiffs accordingly request an award of punitive damages in this matter in a sum to be determined by a finder of fact at trial of this matter.

60.    Plaintiffs would further show that, due to the intentional, fraudulent and/or grossly negligent conduct of Defendant in this matter, Plaintiffs, individually and on behalf of all persons similarly situated, are entitled to an award of attorneys' fees and costs in an amount to be proven at trial or hearing of this matter. Plaintiffs would further show that they are entitled to them reasonable attorneys' fees and costs incurred in seeking injunctive relief from Defendant.

## COUNT VII:  BREACH OF IMPLIED WARRANTIES

61.    Plaintiffs incorporate and reallege each and all allegations recited above as if recited in full herein.

62.    Defendant designed, marketed, sold, and installed water system infrastructure for the use of ratepayers of the City of Jackson.

63.    Defendant impliedly warranted that its products were properly designed, marketed, sold, and installed and that the designs and materials were proper and of workmanlike quality.

64.    Defendant knew and intended that the water system infrastructure would be used to measure water usage and perform billing for Plaintiffs and the proposed Class.

65.    Plaintiffs and the proposed Class all purchased water via water meters having the defects alleged herein.

66.     Defendant had a duty to disclose the risks involved with the water system infrastructure and to not to put defective products on the market.

67.     The defects, as alleged herein, were not an open and obvious risk or a risk that was a matter of common knowledge.

68.     The design and installation of the water meter infrastructure was so unreasonable that a person, aware of the relevant facts, would not use a product of this design.

69.     But for Defendants' breach of implied warranty, Plaintiffs and the proposed Class would not have sustained damages. Plaintiffs have suffered damages as a proximate and foreseeable result of Defendant's fraudulent concealment of the numerous and myriad defects of its performance.

70.     Defendant accordingly should be held fully liable for its breach of warranty. Plaintiffs accordingly request that this Court award them compensation for their damages in an amount that is in the aggregate in excess of $5,000,000.00 and in a precise amount, to be proven at trial.

## COUNT VIII: UNFAIR OR DECEPTIVE TRADE PRACTICES

71.     Plaintiffs incorporate and reallege each and all allegations recited above as if recited in full herein.

72.     The conduct of Defendant, as alleged herein, constitutes unfair and deceptive trade practices in violation of Chapter 75 of the Mississippi Statutes.

73.     The unfair and deceptive acts or practices were in and affecting commerce in that Defendant offered for sale and distribution services and hardware.

74.     The unfair and deceptive acts include but are not limited to: Defendant deliberately represented that its goods and services have characteristics, uses, and/or benefits that

they do not have; and Defendant represented that the goods and services are of a particular standard or quality when they goods and services are of a different standard or quality.

75.     Plaintiffs have suffered damages as a proximate and foreseeable result of Defendant's unfair and deceptive acts or practices in or affecting commerce.

76.     Defendant accordingly should be held fully liable for its unfair and deceptive acts. Plaintiffs accordingly request that this Court award them compensation for their damages in an amount that is in the aggregate in excess of $5,000,000.00 and in a precise amount, to be proven at trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Belinda Chase, William S. Kellum, and Charles Jordan, individually, and on behalf of all other persons similarly situated, demand that they be awarded damages to be paid by Defendants Siemens Industry, Inc., in an amount that shall be proved to the finder-of-fact at the trial of this matter, for their compensatory damages, punitive damages, any and all statutory damages or other remedies available to them not fully pled in this Complaint, and for their attorneys' fees and costs of litigation in a sum to be awarded at trial, in a sum not less than $75,000.00 and in the aggregate in a sum of not less than $5,000,000.00 for all damages suffered by the putative class of all persons similarly situated; and Plaintiffs further request that this Court award injunctive relief in the form of specific performance and cause such orders as are just and necessary to be issued requiring and enjoining Defendants Siemens Industry, Inc. to repair, reinstall and/or remediate the subject components of the water and sewer delivery infrastructure and software components as referenced herein.

Respectfully submitted, this the 3RD day of July, 2019.

Respectfully submitted,

**POINDEXTER PARK AFTER-SCHOOL CLUB, INC., WILLIAM S. KELLUM, CHARLES JORDAN, AND BELINDA CHASE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS**

By: _____
          Philip Hearn, Esq.
          Attorney for Plaintiff

Philip C. Hearn, Esq. (MSB #9366)
HEARN LAW FIRM, P.A.
Post Office Drawer 5009
Jackson, Mississippi 39296-5009
Telephone:  601.720.3541
Facsimile:  601.969.2161
Email:  philiphearn@yahoo.com

Gary E. Mason, Esq.
Whitfield Bryson & Mason LLP
5101 Wisconsin Ave NW, Suite 305
Washington, DC 20016
Main Telephone: 202-429-2290
Direct Telephone: 202-640-1160
Fax: 202-429-2294
E-mail: gmason@wbmllp.com

Joel R. Rhine, Esq.
Rhine Law Firm, P.C.
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062
Email: jrr@rhinelawfirm.com

Stephen W. Mullins, Esq. (MS Bar No. 9772)
Luckey & Mullins, PLLC
1629 Government Street
Ocean Springs, MS 39564
Tel: 228-875-3175
Fax: 228-872-4719
Email: smullins@luckeyandmullins.com