**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| **POINDEXTER PARK** )<br>**AFTER-SCHOOL CLUB, INC., ET AL.** ) | **CIVIL ACTION NO:** |
| ) |
| **PLAINTIFFS,** ) |
| ) |
| **V.** ) |
| ) |
| **SIEMENS INDUSTRY, INC.** ) |
| ) |
| **DEFENDANT.** ) |

POINDEXTER PARK
AFTER-SCHOOL CLUB, INC., ET AL.

     PLAINTIFFS,

V.

SIEMENS INDUSTRY, INC.

     DEFENDANT.

CIVIL ACTION NO:
3:19-CV-474-TSL-LRA

---

### PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S <u>MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW</u>

Plaintiffs, by and through undersigned counsel, hereby submit their Response and Opposition to Defendant's Motion to Dismiss (Doc. 14). As Plaintiffs will show, Defendant's motion lacks merit and should be denied.

### INTRODUCTION

Having first manipulated the contracting process and allegedly providing illusory guarantees to the City in order to secure the contract for infrastructure upgrades to the City's water and sewer service, Defendant Siemens Industry, Inc. ("Defendant" or "Siemens") compounded its misdeeds by completely botching the infrastructure upgrades it was to provide. As a direct result of Siemens' shoddy workmanship, malfunctioning equipment, and wholly inappropriate equipment for the prescribed purpose, Siemens caused incredible harm to the City of Jackson's water and sewer service customers. This harm continues to this day, as customers like Plaintiffs continue to be plagued with the consequences of receiving astronomically high,

and completely inaccurate, water bills.  These consequences include repeated shut-off notices, even for facilities that absolutely depend upon water and sewer services, like childcare facilities.

Siemens now attempts to extricate itself from this lawsuit brought by the persons who suffered the most from Siemens' misconduct.  Siemens' arguments essentially boil down to this – the persons who suffered the most from its misconduct have no recourse whatsoever.  Siemens contends that none of Plaintiffs' claims have any merit as a matter of law.  Instead, Siemens limply suggests that Plaintiffs have adequate administrative remedies for all their injuries, remedies that the Plaintiffs allegedly failed to exhaust.

For the reasons shown below, Siemens is wrong.  There are valid claims presented.  There is no administrative exhaustion issue.  At best, Siemens points out some pleading deficiencies which Plaintiffs can easily rectify via amendment.  But there is no basis for dismissing Plaintiffs' suit in its entirety, and Defendant's motion should be denied.

## STANDARD OF REVIEW

When considering a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept all well-pleaded facts as true and must view all facts in the light most favorable to the plaintiff. *New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 199-200 (5th Cir. 2016). The complaint should be dismissed unless it pleads "enough facts to state a claim to relief that is plausible on its face." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he complaint must allege more than labels and conclusions, a formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Jabaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 319 (5th Cir. 2009).

A.  **No Exhaustion of Administrative Remedies is Required Where There is No Jurisdiction Over these Claims.**

Defendant first raises the specious argument that Plaintiffs were required to exhaust their administrative remedies prior to filing this lawsuit.  This argument is completely misguided, where none of the administrative bodies identified by Defendant have jurisdiction over the Plaintiffs' claims, under the very statute and regulations cited by Defendant.  Also, the City's Water Billing Customer Bill of Rights does not provide adequate remedies for Plaintiffs' claims.  In fact, other than granting a right to appeal a disconnection notice, the Bill of Rights provides no remedies at all.  Not only that, but the Mississippi statute relied upon by Defendant specifically prohibits any administrative action when there has been a lawsuit filed, and specifically exempts tort actions.  Defendant attempts to contort the statute so as to imbue itself with more rights than the municipally-owned or operated public utility would have if it was a party to this action.  This is not the intent of the Mississippi legislature, and there is no administrative exhaustion issue here.

1.  **The Mississippi Public Service Commission Lacks Jurisdiction over Plaintiffs' Claims.**

Defendant's first line of attack based upon administrative exhaustion invokes Miss. Code § 77-3-6(1).  Defendant argues that this statute requires Plaintiffs to go through the investigation, review and arbitration process outlined by this statute prior to filing suit against Siemens, who is a third party not subject to regulation by the Mississippi Public Service Commission (the "Commission").  In so arguing, Defendant impermissibly recasts Plaintiffs' legal claims as a mere dispute over billing and services, which is the only claim over which the Commission has jurisdiction under the plain language of the statute:

1) Any dispute between a municipally-owned or operated public utility and a customer of such public utility **with regard to billing and/or services** in

3

> excess of Two Thousand Five Hundred Dollars ($ 2,500.00) shall be subject to investigation, review and arbitration by the commission upon petition filed therefor with the commission by such public utility or customer. However, the commission shall not commence any investigation or proceedings pursuant to such petition if at the time of filing the petition suit has been filed in any court of this state or of the United States with regard to the subject matter of the dispute and in which such public utility and customer are parties. Any such petition shall be immediately dismissed if any such suit is filed after filing of the petition with the commission.

Miss. Code. Ann. § 77-3-6(1) (emphasis added).

> Except as otherwise provided in Section 77-3-6, **any public utility** as defined in paragraph (d) of Section 77-3-3, owned or **operated by a municipality shall not be subject to the provisions of this article**, except as to extension of utilities greater than one (1) mile outside corporate boundaries after March 29, 1956.

Miss. Code Ann. § 77-3-1 (emphasis added).

Even a cursory review of the claims alleged in the Complaint shows that these are not disputes "with regard to billing and/or services." Plaintiffs make a common law negligence claim. Doc. 1 at ¶¶ 40-43. Plaintiffs' allege common law fraud and fraudulent concealment. Id. at ¶¶ 44-49. Plaintiffs further allege breach of implied warranties (Id. at ¶¶ 61-70) and violation of Mississippi's unfair and deceptive trade practices law (Id. at ¶¶ 71-76). None of these claims are disputes "with regard to billing and/or services," as contemplated by Miss. Code. § 77-3-6(1), and the Commission has no jurisdiction over these claims.

This case is akin to *Howard v. TotalFina E & P USA, Inc.*, 899 So. 2d 882 (Miss. 2005), where the Supreme Court of Mississippi overturned the trial court's decision dismissing the claims based upon alleged failure to exhaust administrative remedies. The *Howard* court found that the Oil and Gas Board lacked jurisdiction over the plaintiff's common law claims, and that there was therefore no need for administrative exhaustion:

> The only claims that remain are those based on common law, over which this Court finds that the Board has no authority.

4

¶ 16. Therefore, since the remaining claims—negligence, nuisance, trespass, breach of contract, strict liability, and outrageous conduct—do not specifically relate to an administrative remedy, this Court finds that they were improperly dismissed without prejudice by the circuit judge.

*Howard*, 899 So. 2d at 888.  The same result must obtain here, where Plaintiffs' claims are not within the jurisdiction of the Commission, under the express statutory language.

Plaintiffs allege they have been wronged by the tortious actions of Siemens, a third party not subject to the jurisdiction of the Commission.   Therefore, even to the extent that Plaintiffs would be required to exhaust administrative remedies involving disputes over public utility "billing and services" pursuant to Miss. Code. Ann. § 77-3-6, the language of this statute only contemplates investigations and arbitration "between the public utility and the customer."

> (2)....The commission is further authorized to conduct and shall conduct investigation of and informal hearings in the dispute and may negotiate **with the public utility and the customer** for the resolution thereof. In every arbitration proceeding under this section the commission shall perform such duties as it deems reasonable and likely to result in settlement of the dispute without commencement of litigation **between the public utility and the customer**.

> (3) Participation in any investigation, proceeding, negotiation, or settlement under the provisions of this section shall be voluntary by **the public utility and the customer**; however, no suit may be commenced in any court of this state by either **the public utility or customer** based upon the facts giving rise to the dispute for a period of sixty (60) days after a petition is filed with the commission under this section.

> (4) The provisions prescribed herein for the Public Service Commission to investigate, review and arbitrate disputes **between a municipally-owned or operated public utility and a customer** of such public utility shall not extend to tort actions.

> Miss. Code Ann. § 77-3-6. (emphasis added).

Plaintiffs dispute here is with Siemens for its tortious conduct causing them harm and is clearly not just a billing and services dispute between a municipally-operated public utility and its customers.

While Plaintiffs concede that in some circumstances, a plaintiff may be required to exhaust administrative remedies in a dispute with a third party, this is not such a case. Two of the cases cited by Defendant for this proposition involve the Mississippi Oil and Gas Board, and the other two involve the Mississippi Worker's Compensation Commission, agencies with regulatory roles clearly distinguishable from the Commission's authority over public utility disputes.

The worker's compensation cases cited by Defendant hold that an employee may not initiate court action against a worker's compensation insurer for bad faith/nonpayment until the worker's compensation commission has determined whether the services and supplies were reasonable and necessary. *See Walls v. Franklin Corp.,* 797 So. 2d 973 (Miss. 2001); *Whitehead v. Zurich Am. Ins. Co.,* 348 F.3d 478 (5th Cir. 2003). This case does not involve worker's compensation benefits.

The oil and gas cases cited by Defendant hold that "Where an administrative agency regulates certain activity, an aggrieved party must first seek relief from the administrative agency before seeking relief from the trial courts" *Chevron U.S.A., Inc. v. Smith*, 844 So. 2d 1145 (Miss. 2002) (holding plaintiff was required to exhaust administrative remedies with the Mississippi Oil and Gas Board that regulates pollution from oil and gas drilling before bringing litigation against third party for pollution.); *See also Miller v. Miss. Res., LLC*, 2018 U.S. Dist. LEXIS 25708, *3, 2018 WL 934827 (S.D. Miss. Feb. 16, 2018.) ("Before a plaintiff sues for activity subject to administrative agency review, she must seek relief from the agency charged with regulating the activity.").

Here, pursuant to Miss. Code Ann. § 77-3-1, the Commission does not regulate municipal public utilities, such as the City of Jackson, except regarding billing and services. The

Mississippi Supreme Court has stated "A governmental entity which owns and operates a utility is not regulated by the Public Service Commission." *Dedeaux Util. Co. v. City of Gulfport*, 938 So. 2d 838, 844 (Miss. 2006) (citing Miss. Code Ann. § 77-3-1). Further, Siemens' activities are not subject to administrative agency review by the Commission.

### 2. The City's Water Billing Customer Bill of Rights Does Not Provide Jurisdiction or Adequate Remedies.

Defendant's invocation of the City of Jackson's Water Billing Customer Bill of Rights ("Bill of Rights") is even more preposterous. Defendant argues that the single right of appeal in the Bill of Rights – the right to appeal a disconnection notice to the City Attorney and then to the City Council – is an adequate administrative remedy for Plaintiffs' claims here. Defendant does not even attempt to explain why the right to appeal a disconnection notice is germane to any of these named Plaintiffs, none of whom allege that they even received a disconnection notice. See Doc. 1 at ¶¶ 20-23. And even if it was the case that the Plaintiffs had alleged that they received a disconnection notice, Defendant does nothing to show this Court how the City Attorney or City Council would have jurisdiction over breach of contract, negligence, fraud, fraudulent concealment, breach of implied warranties, or violation of Miss. Code Chapter 75 claims. The reason for this is simple – the plain language of the Bill of Rights does not grant the City Attorney or the City Council with jurisdiction over claims of this type.

Also, the Bill of Rights does not provide the requisite adequate remedies to make an invocation of the doctrine of administrative exhaustion appropriate. All the City Attorney and City Council are empowered to do under the Bill of Rights is to stave off disconnection of water and sewer services. This is not an adequate administrative remedy for Plaintiffs' claims here. For example, neither the City Attorney nor the City Council could award tort damages for common law negligence or fraud, or statutory damages for violation of Chapter 75 (the

7

Mississippi Consumer Protection Act).  As the Mississippi Supreme Court has ruled, where there is no adequate administrative remedy, this is not a proper case for applying the doctrines of administrative exhaustion:

> The Court considered *Campbell Sixty–Six Express v. J & G Express*, 244 Miss. 427, 440, 141 So.2d 720, 726 (1962) where it held:
>
> We do not think this is a proper case for applying the doctrines of exhaustion of administrative remedies, and of primary jurisdiction. Under the averments of the bill, the complainants' remedy before the commission is not adequate. Where no adequate administrative remedy is provided, the exhaustion doctrine is not applicable. Moreover, there is reasonable doubt as to the availability and adequacy of the administrative remedy.

*Mississippi Dep't of Envtl. Quality v. Weems*, 653 So. 2d 266, 277 (Miss. 1995); *see also Keys v. Safeway Ins. Co*., No. 2:07CV372KS-MTP, 2009 WL 3297574, at *3 (S.D. Miss. Oct. 13, 2009) ("Administrative remedies do not need to be exhausted if the remedies are inadequate").

### 3.  Miss. Code § 77-3-6 Expressly Disavows Administrative Exhaustion and Exempts Tort Actions.

The plain language of § 77-3-6 undercuts Defendant's administrative exhaustion in two other dispositive ways.  First, while Defendant does not include this portion of § 77-3-6(1) in its supporting memorandum, the statute itself states that the filing of a lawsuit moots out any administrative proceedings under the statute:

> However, the commission shall not commence any investigation or proceedings pursuant to such petition if at the time of filing the petition suit has been filed in any court of this state or of the United States with regard to the subject matter of the dispute and in which such public utility and customer are parties. Any such petition shall be immediately dismissed if any such suit is filed after filing of the petition with the commission.

Miss. Code. Ann. § 77-3-6(1).  This express statutory language shows that Defendant has this exactly backwards – not only is there no administrative exhaustion issue, but the filing of this lawsuit actually divests the Commission of any jurisdiction it would otherwise have.  While

8

Plaintiffs acknowledge that the public utility is not a party to this action, it would be an impermissible expansion of the statute to suggest that a private defendant such as Siemens here could invoke administrative exhaustion and force Plaintiffs into the administrative processes when the public utility itself could not.

Similarly, Miss. Code. § 77-3-6(4), which Defendant also fails to cite to this Court, specifically exempts tort actions like the one brought by Plaintiffs here:

> 4) The provisions prescribed herein for the Public Service Commission to investigate, review and arbitrate disputes between a municipally-owned or operated public utility and a customer of such public utility shall not extend to tort actions.

Miss. Code. Ann. § 77-3-6(4). This is a codification of what Plaintiffs show this Court above – that the Commission lacks jurisdiction over Plaintiffs' claim. This express statutory language makes it even more apparent that there is no administrative exhaustion issue.

**B.   Plaintiffs are Valid Third-Party Beneficiaries.**

Contrary to Defendant's arguments, Plaintiffs are in fact valid third-party beneficiaries under the contract between the City of Jackson and Siemens. In *Cope v. Thrasher Constr., Inc.*, 231 So. 3d 989 (Miss. 2017), the Mississippi Supreme Court succinctly laid out the basic principles undergirding third-party beneficiary status:

> "A third person may enforce a promise made for his benefit even though he is a stranger to the contract or to the consideration." *Miss. High School Activities Ass'n, Inc. v. Farris*, 501 So.2d 393, 395–96 (Miss. 1987) (citation omitted). To enforce the promise, the third-party's beneficiary status "must spring from the terms of the contract itself." *Burns v. Washington Savings*, 251 Miss. 789, 796, 171 So.2d 322, 325 (1965). To determine third-party beneficiary status, this Court uses the following analysis:
>
> > (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the

> welfare of the said third party in respect to the subject of the contract.

*Simmons Housing, Inc. v. Shelton*, 36 So.3d 1283, 1286 (¶ 10) (Miss. 2010) (*quoting Yazoo & M.V.R. Co. v. Sideboard*, 161 Miss. 4, 133 So. 669, 671 (1931)).

*Cope*, 231 So. 3d at 993.

Here, there is no question that Plaintiffs – who are the customers of a public utility – are third-party beneficiaries to this contract. "[P]ublic utilities are monopolies engaged in the business of furnishing necessary services to the public." *State, ex rel. Allain v. Mississippi Pub. Serv. Comm'n*, 435 So. 2d 608, 612 (Miss. 1983). In *South Hinds Water Company v. Mississippi Public Service Commission*, 422 So.2d 275 (Miss.1982), the Mississippi Supreme Court noted that "[a] public utility company is entitled to a fair return only upon the value of such of its property as is useful and being used in service for the **customers' benefit**." *South Hinds Water Company,* 435 So.2d at 283 (emphasis added).  It is not hyperbole to say that there would be absolutely no need for the contract between Defendant and the City of Jackson but for the existence of water and sewer service customers like the Plaintiffs here.  If there are no customers, there is no need for improved billing, metering, customer care, or any of the other various critical infrastructure improvements that are the entire subject of this contract.

Turning to the test articulated in *Simmons Housing*, the terms of the contract itself expressly reference both "Residential Customers" and "Commercial and Industrial Customers" in several places.  For example, on Page 21 of 114 (using the ECF page numbering for Document 14-1, which is Exhibit 1 to Defendant's Motion), these terms are repeatedly used when referring to the "Customer Care Module" of the new "Customer Information System" ("CIS") that Siemens was providing to the City of Jackson under the contract.  "Customers" were referenced with regard to the conversion of two years of historical customer account and billing

data. *See* Doc. 14-1 at 22-114.  And, most tellingly, this same section explicitly references the conversion of the Customers' "Premises and Service Points" and "Meters." *Id.*  This more than satisfies the first prong of the *Simmons Housing* test –that "the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class."  The specified class here is "Customers," "Residential Customers," and "Commercial and Industrial Customers," as expressly referenced in the contract.

The second prong of the *Simmons Housing* test is also satisfied by the express references in the contract to "customers," coupled with the benefits provided by the improvements that are the subject of the contract.  By way of example, CIS systems for public utilities of the type that Siemens was upgrading under the contract provide a direct benefit to the customers.  As a recent white paper states, a utility's CIS is "[t]he principal vehicle of customer satisfaction and engagement:"

> A utility's CIS and its processes have a profound effect on the customer experience. For instance, customers form opinions about their utility based on the accuracy and clarity of their utility bill. Processes built around billing and payment —  bill inquiries, resolution and customer grievance policies, for example — greatly shape customers' perceptions and satisfaction ratings.

Cognizant 20-20 Insights, December 2013   "CIS Transformation: Unlocking the Value of Utilities'     Customer     Information     Systems,"     at     Page     3. https://www.cognizant.com/whitepapers/CIS-Transformation-Unlocking-the-Value-of-Utilities-Customer-Information-Systems.pdf.  The same white paper goes on to note that a modernized CIS system will provide a utility's customers with "instantaneous updates to account, bill and payment information to provide customers . . . with up-to-date, real-time information on bill and usage data, account status, payment details, etc." *Id.* at Page 7. Here, the Plaintiffs and other customers of the City of Jackson will receive similar direct benefits (e.g. up-to-date, accurate,

11

real-time information on bill and usage data, account status, and payment details) from the improvements implemented by Defendant Siemens to the City of Jackson's CIS systems. This satisfies the second prong of the *Simmons Housing* test, as well as the U.S. Supreme Court's mandate that the "party asserting third-party beneficiary status also must "at least, show that [the contract] was intended for his direct benefit." *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 57 L.Ed. 195 (1912).

As for the third prong, Siemens unequivocally has "substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract." *Simmons Housing*, 36 So.3d at 1286. Again, if there are no City of Jackson water or sewer customers, there is no need for any of the Siemens' improvements that are the subject of the contract. If there are no customers like Plaintiffs here, there is no need for a Siemens-provided improved CIS system or Customer Care Module. And, pointedly, if Siemens had performed its duties under this contract properly, it would not be in a lawsuit with the City of Jackson, as there would be no customer complaints driving that lawsuit. Under the terms of this contract, Plaintiffs are third-party beneficiaries.

Defendant's principal argument centers around Article 12.2 of the Contract, which can be found at Page 17 of 114 of Doc. 14-1. This section attempts to negate third-party beneficiary status to any party through the use of boilerplate language. However, this article of the contract is inoperative when it comes to "Customers" like the Plaintiffs here, because the express language of the contract references "Customers," "Residential Customers," and "Commercial and Industrial Customers." *See* Doc. 14-1 at 21-114. This is sufficient "express written consent" of the parties referenced in Article 12.2, to imbue the Plaintiffs with the requisite benefits to establish third-party beneficiary status.

None of the case law cited by Defendant compels any different result.  In *S. Indus. Contractors, LLC v. Neel-Schaffer, Inc.*, No. 1:17CV255-LG-JCG, 2017 WL 5906041 (S.D. Miss. Nov. 30, 2017), the "unambiguous clause" that the court relied upon to find no third-party beneficiary status did not include any exceptions (like the "express written consent" exception here) – that clause flatly stated that there were no third-party beneficiaries. *S. Indus. Contractors*, 2017 WL 5906041, at *2.  Also, unlike the Plaintiffs here (who are "Customers" expressly referenced in the contract), the party claiming third-party beneficiary status could not point to any express contractual language that referenced it.

Similarly, in *Garrett Enterprises Consol., Inc. v. Allen Utilities, LLC*, 176 So. 3d 800 (Miss. Ct. App. 2015), the "unambiguous clause" stated "Nothing ... in this Agreement shall be construed to create any right for or to bestow any benefits upon third parties." *Garrett Enterprises*, 176 So. 3d at 803.  There was no carve-out exception, as there is here, for parties expressly referenced.  The same is true in *Pinnacle Tr. Co. v. McTaggart*, 152 So. 3d 1123 (Miss. 2014), where the "unambiguous clause" read (in its entirety): "24. THIRD PARTY BENEFICIARIES. This Agreement does not and is not intended to confer any rights or remedies upon any person or entity other than the signatories." *McTaggart*, 152 So. 3d at 1125.

*McQueen Contracting, Inc. v. Fid. & Deposit Co. of Maryland*, 863 F.2d 1216 (5th Cir.), opinion vacated in part on reh'g, 871 F.2d 32 (5th Cir. 1989) is similar to the other cases cited by Defendant, in that the clause precluding third-party beneficiary status also did not contain any exceptions ("No right of action shall accrue on this bond to or for the use of any person or corporation other than [the City of Biloxi]...." *McQueen Contracting*, 863 F.2d at 1223.  But the Fifth Circuit did not stop there, and also relied upon the fact that "the parties simultaneously executed a payment bond that expressly gave claimants such as McQueen a right of action to

recover under such bond." *Id.* The Fifth Circuit found "that these two items reflect the parties' intent to exclude McQueen as a third-party beneficiary." *Id.* Here, there is not only a limiting clause that makes an exception for "express written consent," but there is no express right of action given to "Customers" like Plaintiffs who directly benefit from this contract. There is not the same "unambiguous clause" that would lead this Court to conclude that Plaintiffs are not third-party beneficiaries, and under the *Simmons Housing* test and the language of this contract, they are.

### C.   Plaintiffs' Negligence Claim Rests Upon a Duty of Ordinary Care and Reasonable Foreseeability.

Defendant's next effort to leave Plaintiffs without any remedy for the harm they suffered rests upon a mischaracterization of the negligence claim as resting solely upon duties arising under the contract. Defendant then goes on to claim that Plaintiffs cannot enforce the contract because Defendant asserts the Plaintiffs are not third party beneficiaries. However, Mississippi law is clear that privity of contract is not required in negligence actions. "In all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action." Miss. Code Ann. § 11-7-20. The Mississippi Supreme Court held that "A plain reading of the statute clearly suggests that it was the legislative intent to remove the privity requirement in all cases." *Keyes v. Guy Bailey Homes, Inc.*, 439 So. 2d 670, 673 (Miss. 1983) (subsequent homeowner could maintain action against builder even though no privity).

Plaintiffs' negligence claim rests upon a duty of ordinary care and reasonable foreseeability. Although the duty owed by Defendant to Plaintiff may have come from a contractual promise made to another, the duty sued on in this negligence action is not the

contractual promise but the duty to use reasonable care in affirmatively performing that promise.

That duty exists independent of the contract.

> Where a person contracts to do certain work he is charged with the common-law duty of exercising reasonable care and skill in the performance of the work required to be done by the contract, and the parties may not substitute a contractual standard for this obligation. Accompanying every contract is a common law duty to perform with care, skill and reasonable experience....

> *George B. Gilmore Co. v. Garrett*, 582 So. 2d 387, 391 (Miss. 1991) (internal citations

omitted.)

Defendant's mischaracterization of the Complaint arises from ignoring and giving no effect to Paragraph 42.   This paragraph's plain language states that Plaintiffs allege that Defendant had a common law "duty of ordinary care" as a construction company, and that the injuries sustained by Plaintiffs were reasonably foreseeable:

> 42.   At all relevant times, Defendant knew or should have known that the deficient performance of its obligations to Plaintiffs and all ratepayers of the City of Jackson's water and sewer authority would foreseeably result in the interruption of water services and in the inaccurate overbilling to ratepayers without effective recourse to said ratepayers for delivery of water and sewer services.   Despite that knowledge, Defendant negligently breached its duty of ordinary care owed to Plaintiffs.

Doc. 1, Page 14 of 22.

Under Mississippi law, for a person to be liable for another person's injury, the cause of an injury must be of such a character and done in such a situation that the actor should have reasonably anticipated some injury as a probable result. *Mauney v. Gulf Ref. Co.*, 193 Miss. 421, 9 So.2d 780, 781 (1942). "The test is whether the actor being charged with negligence in any circumstance acted as a reasonable and prudent person would have acted under the same or similar circumstances." *King v. Cole's Poultry, LLC*, No. 114CV00088MPMDAS, 2016 WL 6993763, at *7 (N.D. Miss. Nov. 29, 2016), quoting *Knapp v. Stanford*, 392 So.2d 196, 199

(Miss. 1980).  In assessing whether a common law duty exists, "[t]he important component of the existence of the duty is that the injury is 'reasonably foreseeable.'" *Rein v. Benchmark Const. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004), *quoting Lyle v. Mladinich*, 584 So.2d 397, 399 (Miss.1991).

Common law duties of this type do not spring from any contract.  For example, in *Rein*, the existence of the construction company's duty hinged upon whether the construction company could reasonably foresee that its conduct could likely lead to the injury sustained:

> The ultimate question is whether Benchmark could reasonably foresee that failure to adequately provide for drainage around the building could likely lead to an insect infestation that would cause a death by fire ant bites to a resident of the nursing home.

*Rein*, 865 So. 2d at 1143.  In *King*, *supra*, the plaintiffs asserted that the defendant owed an independent duty of care to them because their injuries were reasonably foreseeable given the inherent nature of the chicken growing operations and the clear public opposition to commencing these operations in the Monroe County, Mississippi area.  *King*, 2016 WL 6993763, at *8.  The court in *King* ruled that there was an independent duty of care, because the injuries sustained were reasonably foreseeable. *Id.*

Here, the plain language of Paragraph 42 alleges both a common law duty of ordinary care, and that the injuries sustained by Plaintiffs were foreseeable.  It is important to note that these injuries – the interruption of water services, the inaccurate overbilling, and incurring the cost and expense of fighting the inaccurate overbilling – could exist without there being any breach of the contract whatsoever, thus further establishing that the negligence claim is not a mere reiteration of the breach of contract claim.  The contract doesn't require that Siemens meet a 100% meter accuracy and reliability. Indeed, the highest measure of meter accuracy spelled out by the contract is 94.70%, over the entire life of the contract.  See Doc. 14-1 at Page 45 of 114.

Plaintiffs could therefore sustain negligently inaccurate overbilling even if there was no breach. At the pleadings stage, under the liberal notice pleading requirements of Rule 8(a)(2) (which merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief") and with all inferences taken in Plaintiffs' favor, this is sufficient to establish Plaintiffs' negligence claim, based upon the common law duty of ordinary care set out in Paragraph 42.

As with its breach of contract argument, none of the case law cited by Defendant compels a different result.  The reason for this is because Defendant only focuses on Paragraph 41 of the Complaint, and then uses that paragraph to restate Plaintiffs' negligence allegations as follows: "In other words, Plaintiffs claim that Siemens was negligent because it allegedly breached its duties under the Agreement." Doc. 14 at Page 10 of 20.  But once Plaintiffs' negligence claim is properly stated as violated a common law duty of ordinary care, based upon entirely foreseeable injuries, Defendant's case law becomes wholly inapposite, or actually supports Plaintiffs' position.

*Clausell v. Bourque*, 158 So. 3d 384 (Miss. Ct. App. 2015), cited favorably by Defendant on Page 10 of its supporting memorandum, is an example of case law that actually supports the Plaintiffs' position articulated above.  In *Clausell*, the Mississippi Court of Appeals articulated the well-settled principle that there is a common law duty of ordinary care that accompanies every contract:

> There must be a duty of care "fixed by law and independent of the contract."
> *Hazell Mach. Co. v. Shahan*, 249 Miss. 301, 317, 161 So.2d 618, 624 (1964). But,
> as the supreme court noted in *Hazell*, a duty of care "may sometimes have relation
> to obligations growing out of, or coincident with, a contract, and frequently the
> same facts will sustain either class of action." *Id*. The usual case is that the obligor
> must use reasonable care in his performance of the contractual duty.
> **"Accompanying every contract is a common law duty to perform with care,
> skill and reasonable experience, and a negligent failure to observe any of
> these conditions is a tort as well as a breach of contract."** *Gilmore Co. v.*

*Garrett*, 582 So.2d 387, 391 (Miss.1991) (quoting Davis v. Anderson, 501 S.W.2d 459, 462 (Tex.Civ.App.1973)).

*Clausell*, 158 So. 3d at 391 (emphasis added).  This is precisely the point that Plaintiffs are making above.  There is a separate, concomitant common law duty of ordinary care alleged by Plaintiffs in Paragraph 42 of the Complaint.

Similarly, *Palmer v. Orkin Exterminating Co.*, 871 F. Supp. 912 (S.D. Miss. 1994), *aff'd sub nom. Palmer v. Orkin Exterminating Co.*, 71 F.3d 875 (5th Cir. 1995) makes the point that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well.    Quoting *Smith v. Orkin Exterminating Co., Inc.*, 791 F. Supp. 1137 (S.D.Miss.1990), *aff'd*, 943 F.2d 1314 (5th Cir.1991),

the court explained:

> It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of the contract to avoid harming him. Such independent harm may be found because of the relationship between the parties, or because of defendant's calling or because of the nature of the harm.

*Palmer*, 871 F. Supp. At 914 (S.D. Miss. 1994).  Here, the foreseeable nature of the injuries specifically alleged by Plaintiffs in Paragraph 42 establishes the independent tort of negligence.[1] This is sufficient to defeat Defendant's motion.

**D.     Plaintiffs' Should be Allowed to Amend Their Fraud and Fraudulent Concealment Claims.**

Defendant's next argument is that the Plaintiffs' fraud and fraudulent concealment claims are not sufficiently detailed enough to survive under Rule 9(b)'s heightened pleadings standard, that reliance is not alleged, and that there is no fiduciary relationship with Plaintiffs that required

---

[1] It is also noteworthy that the negligence claim in *Palmer* that the court dismissed was expressly framed as "negligent breach of contract."  Plaintiffs' claims here are simply for "Negligence." Doc. 1, Page 13 of 22.

Siemens to make any disclosures. Plaintiffs agree that the current operative Complaint is thin as to the "who, why, what, where, and why" of the Defendant's misrepresentations, and that reliance is not properly alleged. However, Plaintiffs respectfully request leave under Rule 15(a) to make appropriate amendments to their fraud claim, filling in the necessary detail, rather than dismissing this claim with prejudice. The fraud claim is not barred by any statute of limitations or other substantive bar to recovery. Leave to amend is typically granted where courts have dismissed claims due to "mere pleading deficiencies—rather than substantive bars to recovery such as statutory immunity or a statute of limitations," *Ducksworth v. Rook*, No. 2:14-CV-146-KS-MTP, 2015 WL 737574, at *6 (S.D. Miss. Feb. 20, 2015). Absent such factors as undue delay, previous amendments (of which there have been none here), futility, and prejudice, "the leave sought should, as the rules require, be 'freely given.'"*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

### E. Plaintiffs' Vicarious Liability Claim Should be Read in Conjunction with the Breach of Contract and Negligence Claims.

While Plaintiffs agree that vicarious liability is not a stand-alone cause of action, this does not mean that these paragraphs of the Complaint should be stricken or dismissed. As shown above, Plaintiffs have properly alleged both a breach of contract (Count I) and a negligence claim (Count II). The vicarious liability paragraphs directly relate to those two claims. Paragraph 51 specifically relates to the vicarious liability of Defendant Siemens for acts of the City of Jackson personnel taken in furtherance of contractual duties. Paragraph 52 directly relates to Siemens' vicarious liability for the tortious acts of City of Jackson employees and personnel. While it would not be inappropriate to strike the heading of this claim, the substantive paragraphs should be incorporated into their respective legal claims for breach of

contract and negligence.  In the alternative, Plaintiffs request leave to amend under Rule 15(a) to place these paragraphs in their proper claims.

### F.     Specific Performance is Allowed in Conjunction with Compensatory Damages.

Defendant is also correct that specific performance is a contract remedy, and not a separate cause of action.  However, Defendant is dead wrong that Plaintiffs' claim for $5 million in compensatory damages evidences an adequate remedy at law that precludes specific performance.  In a suit for specific performance, the court may order specific performance along with damages for the defendant's delay in performing the contract.  *Derr Plantation, Inc. v. Swarek*, 14 So. 3d 711, 718 (Miss. 2009), citing *McVay v. Castenara*, 152 Miss. 106, 112, 119 So. 155, 156 (1928). Or, the court may, in its discretion, reject the plaintiff's claim that specific performance is the most appropriate remedy and instead award compensatory damages as the entire remedy for the breach. *Id.*, citing *Frierson v. Delta Outdoor, Inc.*, 794 So.2d 220, 225 (Miss.2001).  As with the vicarious liability paragraphs, the paragraphs relating to specific performance (55-58) should be incorporated into the breach of contract claim.

Also, Defendant is wrong that Plaintiffs cannot make out a breach of contract claim.  As shown above, Plaintiffs are valid third-party beneficiaries to this contract.  Thus, the claim for specific performance (which is in fact the only injunctive relief that Plaintiffs seek) is proper in this case.

Should the Court be inclined to dismiss this claim, Plaintiffs seek leave to amend their Complaint pursuant to Rule 15(a), to incorporate the specific performance allegations into their breach of contract claim.

### G.     Punitive Damages and Attorneys' Fees Should Also be Incorporated into the Breach of Contract and Negligence Claims.

Like the vicarious liability and specific performance claims, the punitive damages and attorneys fee claims should be incorporated into the breach of contract and negligence claims, rather than dismissed or stricken.  Defendant admits that these forms of relief are permissible remedies under Mississippi law – they simply aren't independent causes of action.  There is no reason to dismiss these claims, when Plaintiffs could (with leave of Court) amend their Complaint to add them anyway.  Alternatively, Plaintiffs seek leave to amend pursuant to Rule 15(a).

Not only that, but there is a plethora of case law holding that punitive damages requests provide no basis for dismissal.  Defendant's arguments premised on Plaintiffs' request for punitive damages reflect a fundamental misunderstanding of federal civil practice.  Rule 12(b)(6) only countenances dismissal for failure to state a claim. Fed.R.Civ.P. 12(b)(6).  Because a request for punitive damages is not a "claim" but a remedy, punitive damages are not properly the subject of a motion to dismiss for failure to state a "claim."

"The question whether a plaintiff has stated a claim turns not on whether he has asked for the proper remedy but whether he is entitled to any remedy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 131, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Thus, "[t]he sufficiency of a complaint is dependent on the facts alleged in the claim for relief, 'not on the ... allegations of damages or [the] theory of damages.'" *Yaskot v. International Natural, LLC*, 2011 WL 2036688, at *3 (D.Idaho May 24, 2011) (*quoting Nester v. Western Union Telegraph Co.*, 25 F.Supp. 478, 481 (S.D.Cal.1938)); *see also Palantir Technologies, Inc. v. Palantir. net, Inc.*, 2011 WL 3047327, at *3 (N.D. Cal. July 25, 2011) ("the test of a complaint pursuant to a motion to dismiss lies in the claim, not in the demand.").

Nor does the availability of punitive damages control or even pertain to the sufficiency of any claim. *See, e.g., Traylor v. Avnet, Inc.*, 2008 WL 2945509, at *2 (D. Ariz. July 28, 2008) ("[a] demand for relief is not itself a part of the plaintiff's claim ... Therefore, failure to specify relief to which a plaintiff is entitled would not warrant dismissal for failure to state a claim under Rule 12(b)(6)."); *Palantir Technologies*, 2011 WL 3047327, at *3 ("It need not appear that plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that some relief can be granted."); *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir.2002) ("the demand [for relief] is not itself a part of the plaintiff's claim ... and so failure to specify relief to which the plaintiff was entitled would not warrant dismissal under Rule 12(b)(6) (dismissal for failure to state a claim)."); *Burkina Wear, Inc. v. Campagnolo, S.R.L.*, 2008 WL 1007634, at *3 (S.D.N.Y. April 9, 2008) ("the availability of the specific relief requested pursuant to any given count of the Complaint is not relevant to the question of whether [plaintiff] has stated a claim.").

Because punitive damages are but a remedy, and thus neither constitute a claim nor pertain to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed.R.Civ.P. 12(b)(6). *See, e.g., Monaco v. Liberty Life Assur. Co.*, 2007 WL 420139, at *6 (N.D. Cal. Feb.6, 2007) ("Defendants argue that there is no basis for Plaintiff's claim for punitive damages. However, a complaint is not subject to a motion to dismiss for failure to state a claim under Rule 12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law."); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigations*, 517 F. Supp.2d 662, 666 (S.D.N.Y.2007) ("Punitive damages are not a claim and thus it makes little sense for defendants to move to dismiss [ ] *claims* for punitive damages.") (emphasis in original); *Douglas v. Miller*, 864 F. Supp.2d 1205, 1220 (W.D.Okla.2012) ("With respect to the

issue of punitive damages, whether such damages are recoverable is not a proper subject for adjudication in a Rule 12(b)(6) motion, as the prayer for relief is not a part of the cause of action."); *Benedetto v. Delta Air Lines*, Inc., 917 F. Supp. 2d 976, 984 (D.S.D. 2013) ("punitive damages are a form of relief and not a 'claim' that is subject to a Rule 12(b)(6) motion to dismiss"); *Security Nat. Bank of Sioux City, Iowa v. Abbott Labs*., 2012 WL 327863, at *21 (N.D. Iowa Feb.1, 2012) ("punitive damages are not a cause of action, and as such ... they are not subject to a motion to dismiss.").

Fed.R.Civ.P. 54 underscores the impropriety of dismissing requests for punitive damages under Fed.R.Civ.P. 12(b)(6). Rule 54(c) states: "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed.R.Civ.P. 54(c). "It thus makes little sense to require detailed factual allegations to support a demand for certain damages when such damages may ultimately be awarded even if they were never pled in the complaint." *Royal Caribbean*, 2012 WL 920675, at *5; *see also Soltys v. Costello*, 520 F.3d 737, 742 (7th Cir.2008) (noting that "Rule 54(c) contemplates an award of punitive damages if the party deserves such relief-whether or not a claim for punitive damages appears in the complaint" and thus describing as a "fundamental legal error" "the assumption that a prayer for punitive damages had to appear in the complaint in order to sustain an award of such damages.").

Accordingly, the Court should deny Defendant's motion as it relates to the punitive damages claim.

## H.   Implied Warranties Do Not Require Privity and Cannot be Waived under Mississippi Law.

### 1.   Neither Third Party Beneficiary Status nor Privity is Required for Breach of Warranty Claims.

Initially, Defendant contends that Plaintiffs may not assert a breach of warranties claim because they are not third-party beneficiaries under the contract between the City of Jackson and Siemens. As discussed *supra,* Plaintiffs are third-party beneficiaries under the contract, but even if they were not, Miss. Code Ann. § 11-7-20 clearly states that privity of contract is not required for breach of warranty actions.

"In all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action." Miss. Code Ann. § 11-7-20. This Court has held "a plaintiff who is injured due to a breach of warranty may recover from each seller of the individual product which caused the injury, so long as the product was defective when each respective seller possessed it." *Tellus Operating Group, L.L.C. v. R & D Pipe Co.*, 377 F. Supp. 2d 604, 611 (S.D. Miss. July 19, 2005).

### 2. Implied Warranties Cannot be Waived under Mississippi Law.

Defendant's argument regarding Plaintiffs' Implied Warranty claim (Count VII) is wrong as a matter of law. Mississippi law recognizes two implied warranties in contracts for the sale of goods: the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. The implied warranty of merchantability arises under Mississippi Code Annotated section 75–2–314, which states in part that: "[U]nless excluded or modified (Section 75-2-316), a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Miss. Code Ann. § 75–2–314(1).

The implied warranty of fitness for a particular purpose arises under Mississippi Code Annotated section 75–2–315, which provides in part that:

24

> [W]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under Section 75-2-316, an implied warranty that the goods shall be fit for such purpose.

Miss. Code Ann. § 75-2-315.

Miss. Code Ann. § 75-2-316 sets forth different standards on enforceability or modification to warranties for (i) contracts between merchants and (ii) sellers of consumer goods and services. While Miss. Code Ann. § 75-2-316 subsections (1) and (2) provide that exclusion or modification of warranties in contracts between merchants must be reasonable and conspicuous, Miss. Code Ann. § 75-2-316(3) provides that any attempted modification of implied warranties by sellers of consumer goods and services is unenforceable.

> Notwithstanding subsection (1) and (2), any oral or written language used by a seller of consumer goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or to exclude or modify the consumer's remedies for breach of those warranties, is unenforceable.

Miss. Code Ann. § 75-2-316(3).

Miss. Code Ann. § 11-7-18 reiterates that implied warranties to consumers may not be waived under Mississippi law and provides:

> Except as otherwise provided in Sections 75-2-314, 75-2-315 and 75-2-719, there shall be no limitation of remedies or disclaimer of liability as to any implied warranty of merchantability or fitness for a particular purpose in a sale to a consumer, as defined in Section 75-1-201(b)(11), of consumer goods, as defined in Section 75-9-102(a)(23). **The provisions of this section may not be waived or varied by agreement.**

Miss. Code Ann. § 11-7-18 (emphasis added).

Defendant attempts to skirt this statutory language in Footnote 3 of its memorandum, by nakedly asserted that the statutory language does not apply because "this case does not involve either the warranty of merchantability or fitness for particular purpose, or a sale of consumer

goods." Doc. 14 at Page 17 of 20, note 3.  But Defendant provides no authority for its contention

that the equipment that it provided under this contract, such as its water meters, were not goods

fit for a particular purpose.  It is hard to imagine what particular purpose a water meter would

possibly serve other than metering water.  Further, "'Consumer goods' means goods that are

used or bought for use primarily for personal, family, or household purposes."  Miss. Code Ann.

§ 75-9-102(23).   Here, ratepayers are buying and using water via defective water meters

primarily for personal, family, or household purposes; therefore, this case does involve a sale of

consumer goods.

The cases Defendants cite as holding that "[d]isclaimers of implied warranties are

enforceable under Mississippi law," do not apply here.  Doc. 14 at Page 17 of 20.  *See Stribling*

*Bros. Mach. Co. v. Girod Co.,* 124 So. 2d 289, 292 (Miss. 1960); *Smith v. Orkin Exterminating*

*Co.,* 791 F. Supp. 1137, 1141 (S.D. Miss. October 23, 1990).  First, *Smith* itself notes that:

> The holding in *Stribling Brothers* has been limited by the adoption of Miss. Code
> Ann. § 11-7-182 [sic] and the Uniform Commercial Code [UCC], Miss. Code
> Ann. §§ 75-1-101, et seq., **which forbids the limitations of implied warranties**
> **and limitations of the remedies for the breach of the implied warranties by**
> **the seller of goods or services**.

*Smith* at 1141. (emphasis added).

Next, the holding in *Smith* did not relate to implied warranties, but to an express warranty

in a services contract.  The Southern District of Mississippi Court noted that *Smith* "does not

involve a claim for breach of implied warranties.... Even had the defendant attempted to limit

the implied warranties, the plaintiff does not seek remedies based thereon."  *Id.*

Further, in *Smith*, the express warranty at issue was a warranty on insect fumigation

services, not on any goods.  This District Court held that "the prohibition on the limitation of

express warranties only applies to the manufacturer of consumer goods.  Therefore, there is

nothing in the Mississippi statutes that would forbid the limitation of the remedies for the breach of an express warranty provided in a service contract." *Id.* at 1141-1142.

Therefore, the cases cited by Defendant are inapposite to the case at bar.  First, the Complaint here clearly alleges breach of implied warranties, not an express warranty: "Defendant impliedly warranted that its products were properly designed, marketed, sold, and installed and that the designs and materials were of workmanlike quality." Doc. 1 ¶ 63.  Further, the Complaint alleges "But for Defendants' [sic] breach of implied warranty, Plaintiffs and the proposed class would not have sustained damages.  Plaintiffs have suffered damages as a proximate and foreseeable result of Defendant's fraudulent concealment of the numerous and myriad defects of its performance." Doc. 1 ¶ 69.

Next, Siemens is a manufacturer of goods, not merely a provider of services.  In its contract with the City of Jackson, Siemens notes, "[A]ll equipment manufactured by Siemens or bearing its nameplate will …." Doc. 14.1 § 5.6(a).  The City of Jackson is essentially a seller of those goods to consumers for personal, family, or household uses, and the Complaint alleges, "Plaintiffs and the proposed Class all purchased water via water meters having the defects as alleged herein." Doc. 1 ¶ 65.

Defendant's warranties argument fails because i) privity of contract is not required for a claim of economic loss based on breach of warranties and ii) under the circumstances as alleged in the Complaint, breach of the implied warranties of fitness for a particular purpose and of merchantability cannot be disclaimed under Mississippi law.

### I.     Plaintiffs Move for Leave to Voluntarily Dismiss Their MCPA Claim Without Prejudice.

Finally, Plaintiffs respectfully move this Court for leave to voluntarily dismiss their Mississippi Consumer Protection Act claim without prejudice.  Once Plaintiffs have satisfied the

statutory conditions precedent to making this claim, Plaintiffs will seek leave to amend, if appropriate.

## CONCLUSION

For all the foregoing reasons, the Court should deny Defendant's motion, and grant leave to amend where requested.

Respectfully submitted, this the 11th day of November, 2019.

Respectfully submitted,

**POINDEXTER PARK AFTER-SCHOOL CLUB, INC., WILLIAM S. KELLUM, CHARLES JORDAN, AND BELINDA CHASE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS**

By:   /s/ Philip Hearn
                Philip Hearn, Esq.
                Attorney for Plaintiff

Philip C. Hearn, Esq. (MSB #9366)
HEARN LAW FIRM, P.A.
Post Office Drawer 5009
Jackson, Mississippi 39296-5009
Telephone:  601.720.3541
Facsimile:  601.969.2161
Email:  philiphearn@yahoo.com

Gary E. Mason, Esq.
Whitfield Bryson & Mason LLP
5101 Wisconsin Ave NW, Suite 305
Washington, DC 20016
Main Telephone: 202-429-2290
Direct Telephone: 202-640-1160
Fax: 202-429-2294
E-mail: gmason@wbmllp.com

Joel R. Rhine, Esq.
Rhine Law Firm, P.C.
1612 Military Cutoff Road, Suite 300

Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062
Email: jrr@rhinelawfirm.com

Stephen W. Mullins, Esq. (MS Bar No. 9772)
Luckey & Mullins, PLLC
1629 Government Street
Ocean Springs, MS 39564
Tel: 228-875-3175
Fax: 228-872-4719
Email: smullins@luckeyandmullins.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By:   /s/ Philip Hearn
               Philip Hearn, Esq.
               Attorney for Plaintiff