**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **POINDEXTER PARK** | ) | |
| **AFTER-SCHOOL CLUB, INC., ET AL.** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **PLAINTIFFS,** | ) | **3:19-CV-474-TSL-LRA** |
| | ) | |
| **V.** | ) | |
| | ) | |
| **SIEMENS INDUSTRY, INC.** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

**DEFENDANT'S REBUTTAL BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendant Siemens Industry, Inc. ("Siemens") submits this rebuttal brief in support of its motion to dismiss for failure to state a claim (Doc. 14).

## INTRODUCTION

Plaintiffs have offered no valid reason why their complaint should not be dismissed. They continue to focus on allegations made by the City of Jackson in separate state court litigation concerning a contract between the City and Siemens under which Siemens performed water and sewer system upgrades and installed a new water metering and billing system for the City (the "Agreement"). But Plaintiffs have failed to offer any legitimate legal explanation why they can assert claims in connection with that contract, especially when the contracting parties expressly disclaimed any intent to provide rights to third parties.

In response to Siemens' motion to dismiss, Plaintiffs concede several points—they did not plead their fraud claims with particularity; they have not satisfied the prerequisites to bring a claim under the Mississippi Consumer Protection Act; and they cannot assert claims for vicarious

1

liability, specific performance, punitive damages, and attorney's fees as separate causes of action. By virtue of those concessions, Counts III (fraud), IV (vicarious liability), V (specific performance), and VI (punitive damages and attorneys' fees) should be dismissed.

Plaintiffs' responses to Siemens' other arguments for dismissal fall short, as detailed below.  As a result, Plaintiffs' complaint should be dismissed in its entirety.

## ARGUMENT

**I.     Plaintiffs have not exhausted either of their two available administrative remedies.**

Plaintiffs do not dispute that they failed to seek an administrative remedy from the Mississippi Public Service Commission ("PSC") or the City for the City's alleged overbilling of for water services.  They instead contend that exhaustion of such administrative remedies is not required because the PSC lacks jurisdiction over the claims they assert in this case; because the City's Water Billing Customer Bill of Rights is inadequate; and because Mississippi law prohibits a remedy by the PSC in these circumstances.  Plaintiffs are wrong on each point.

> **A.     The PSC has jurisdiction to provide an administrative remedy for the City's alleged overbilling for water services that Plaintiffs must exhaust before proceeding with this litigation.**

Mississippi law plainly empowers the PSC to provide Plaintiffs with an administrative remedy for the alleged overbilling by the City.  Under Miss. Code § 77-3-6(1), "[a]ny dispute between a municipally-owned or operated public utility and a customer of such public utility with regard to billing and/or services in excess of Two Thousand Five Hundred Dollars ($2,500.00) shall be subject to investigation, review and arbitration by the commission upon petition filed therefor with the commission by such public utility or customer."[1]  Plaintiffs concede—as they must—that this provision confers jurisdiction on the PSC to resolve disputes between a

---

[1] Plaintiffs do not dispute that each of their alleged overbillings exceeds the statutory threshold of $2,500.00.

municipally-owned utility and its customer over billing and services.  *See* Doc 20 at 3–4.  Despite

that concession, Plaintiffs argue that they did not have to exhaust administrative remedies because

(1) the PSC lacks jurisdiction to determine Plaintiffs' various common-law claims in this litigation;

and (2) Siemens is not a public utility subject to the PSC's jurisdiction.  *See id.* at 3–7.  Neither of

those arguments excuses Plaintiffs' failure to exhaust their administrative remedies.

 *First*, Plaintiffs argue that this case is not a "mere dispute over billing and services" because

they assert common-law claims that the PSC cannot adjudicate.  Doc 20 at 3.  But in deciding

whether exhaustion is required, the question is "not whether the [PSC] has the power to determine

the [plaintiffs'] common law claims as if it were a court of law and to award the damages which

the [plaintiffs] seek."  *Town of Bolton v. Chevron Oil Co.*, 919 So. 2d 1101, 1107–08 (Miss. Ct.

App. 2005).  Instead, the question is whether the PSC's "authority embraces the types of harm

suffered by the [plaintiffs] such that [they] are precluded from seeking monetary and injunctive

relief … until they exhaust their remedies."  *Id.* at 1108.

 The PSC's authority here extends to disputes over billing and services, and Plaintiffs'

claims are based, at least in part, on alleged overbilling.  Indeed, Plaintiffs allege that they received

"inaccurate and inflated billing" from the City.  *See* Compl. at ¶ 10; *id.* at ¶ 19 (alleging that "the

City is still issuing water bills that are grossly inaccurate"); *id.* at ¶¶ 20–23 (alleging

"unexplainable balance[s]" received from the City).  Most importantly, Plaintiffs seek damages

for "overpayment of water services" and "inaccurate overbilling."  *Id.* at ¶¶ 38, 42.  Although

Plaintiffs may assert "common-law damages claims" seeking "relief beyond [the PSC's] power to

grant," they still must first exhaust administrative remedies because the PSC has authority

concerning overcharges on water bills—one of "the types of harm suffered" by Plaintiffs.  *Miller*

*v. Miss. Res., LLC*, 2018 WL 934827, at \*2 (S.D. Miss. Feb. 16, 2018); *Town of Bolton*, 919 So. 2d at 1108.

Plaintiffs erroneously rely on *Howard v. TotalFina E&P USA, Inc.*, 899 So. 2d 882 (Miss. 2005), in seeking to dodge their failure to exhaust administrative remedies.  In that case, the Mississippi Supreme Court held that a plaintiff's common-law claims did not "specifically relate to an administrative remedy" and so did not have to be exhausted before the Mississippi Oil and Gas Board.  *Id.* at 888.  But that was true because "[t]he applicable statute unambiguously limit[ed] the Board's authority and jurisdiction to noncommercial disposal of oil field exploration and production wastes."  *Id.* at 887.  The claims at issue in *Howard* involved "commercial disposal activities which [were] beyond the authority of the Board."  *Id.*  In other words, "the harms complained of by the plaintiff … in *Howard* were not clearly within the authority of the applicable administrative agency."  *Assoc. Cas. Ins. Co. v. Allstate Ins. Co.*, 507 F. Supp. 2d 610, 624 (S.D. Miss. 2007).  Not so here.  The PSC plainly has authority over billing and services disputes involving municipal water providers.

***Second***, Plaintiffs erroneously contend that Miss. Code § 77-3-6 contemplates dispute resolution "between the public utility and the customer," and thus Plaintiffs cannot be required to exhaust that administrative remedy before they can assert claims against "Siemens, a third party not subject to the jurisdiction of the [PSC]."  Doc 20 at 5–6.  But, critically, Plaintiffs concede that "a plaintiff may be required to exhaust administrative remedies in a dispute with a third party."  *Id.* at 6.  Plaintiffs attempt to distinguish the controlling Mississippi cases on this point, but the legal principle cannot be avoided.  Specifically, Plaintiffs point out that the relevant cases arose in situations where the applicable administrative authorities were the Worker's Compensation Commission and the Oil and Gas Board.  But Plaintiffs offer no credible explanation why the legal

4

principle would apply any differently to the PSC.   In fact, in holding that a third party not subject to the administrative body's jurisdiction can rely on an opposing party's failure to exhaust administrative remedies, the Mississippi Supreme Court made clear that the deciding factor is not the precise identity of the administrative body, but rather whether the applicable statute conferred jurisdiction over the specific disputed issue to the administrative agency for review.   *Walls v. Franklin Corp.*, 797 So. 2d 973, 976 (Miss. 2001).   Here, Section 77-3-6 plainly confers jurisdiction to the PSC over disputes about alleged overbilling by a municipal water provider in an amount exceeding $2,500.00.

In short, Mississippi law is clear that "[b]efore a plaintiff sues for activity subject to administrative agency review, she must seek relief from the agency charged with regulating the activity."  *Miller*, 2018 WL 934827, at *2 (citing *State v. Beebe*, 687 So. 2d 702, 704 (Miss. 1996)); *accord Chevron USA, Inc. v. Smith*, 844 So. 2d 1145, 1148 (Miss. 2002).   A dispute over water billing and services in excess of $2,500—as Plaintiffs allege here—is "activity subject to administrative agency review" and is thus within the PSC's jurisdiction.   *See Miller*, 2018 WL 934827, at *2.  As a result, Plaintiffs cannot proceed with litigation in this Court until they exhaust their administrative remedies before the PSC.

**B.    The City's Water Billing Customer Bill of Rights provides an administrative remedy that Plaintiffs must exhaust before proceeding with this litigation.**

As Siemens pointed out in its opening brief, there is a second administrative remedy that Plaintiffs should have exhausted before filing this action—the remedy available under the City's Water Billing Customer Bill of Rights.   Plaintiffs argue that this remedy—a right to appeal a disconnection notice—"is [not] germane to any of these named Plaintiffs, none of whom allege that they even received a disconnection notice."  Doc. 20 at 7.  But Plaintiffs, in fact, alleged in their complaint that the City "issues demands for collection and shutoff notices," and they also

alleged that one of the Plaintiffs awaits the results of his appeal under the Customer Bill of Rights process.  Doc. 1 at ¶¶ 20, 56.  Further, Plaintiffs in their brief opposing the dismissal motion state that the "consequences" from Siemens' alleged misconduct "include[s] repeated shut-off notices."  Doc. 20 at 2.  Thus, having made allegations about shut-off notices, Plaintiffs cannot now escape the need to pursue administrative remedies under the City's Customer Bill of Rights before bringing this litigation.

The Customer Bill of Rights provides multiple levels of review for customers threatened with disconnection of services for nonpayment and pledges that the City will correct billing errors.  Doc. 14, Ex. 2.  Although Plaintiffs are correct that the City does not have jurisdiction to adjudicate common-law claims, the question for the exhaustion analysis is whether the administrative agency's "authority embraces the types of harm suffered" by the plaintiffs.  *Town of Bolton*, 919 So. 2d at 1108.  Because the Customer Bill of Rights provides for administrative review of the alleged overbilling about which Plaintiffs complain and the agency's "authority embraces the types of harm" Plaintiffs allegedly suffered, *id.*, Plaintiffs must exhaust that administrative remedy before this litigation can proceed.

### C.       Nothing in Section 77-3-6 exempts Plaintiffs from the exhaustion requirement.

Contrary to Plaintiff's argument (Doc. 20 at 8-9), nothing in Miss. Code § 77-3-6 excuses Plaintiffs from the need to exhaust the administrative remedy offered by the PSC.

Miss. Code § 77-3-6(1) provides that "the commission shall not commence any investigation or proceedings … if at the time of filing the petition suit has been filed in any court of this state or of the United States with regard to the subject matter of the dispute and in which such public utility and customer are parties."  Plaintiffs concede that this is not a lawsuit between a public utility and its customers.  Doc. 20 at 9.  As a result, the pending-suit exemption of § 77-

6

3-6(1) plainly does not apply.  Plaintiffs contend that this plain reading of the statutory language "impermissibl[y] expan[ds]" § 77-3-6 and gives Siemens a right that the public utility would not have.  But the statute's plain language compels that result, and "[w]hen a statute is unambiguous and conveys a clear and definite meaning, th[e] Court follows its plain terms." *Nissan N. Am., Inc. v. Tillman*, 273 So. 3d 710, 714 (Miss. 2019) (citation omitted); *see also Newsome v. Peoples Bancshares*, 269 So. 3d 19, 26 (Miss. 2018) ("The Court's role is not to decide what a statute should provide, but to determine what it does provide." (citations and quotation marks omitted)).

Nor does Miss. Code § 77-3-6(4) excuse Plaintiffs' failure to exhaust.  Under that subsection, "the provisions … for the Public Service Commission to investigate, review and arbitrate disputes between a municipally-owned or operated public utility and a customer of such public utility shall not extend to tort actions."  Plaintiffs argue that they have filed a tort action against Siemens and so do not have to present their claims for administrative resolution.  That argument again cannot be reconciled with the statute.  Under settled Mississippi law, "[i]n interpreting any part of a statute th[e] Court will first look to the statute as a whole to ensure its meaning is not taken out of context." *32 Pit Bulldogs & Other Prop. v. Cty. of Prentiss*, 808 So. 2d 971, 974 (Miss. 2002).  Section 77-3-6 governs—and provides for administrative review of— disputes *between* the public utility and the customer.  In context then, this provision eliminates the PSC's jurisdiction to resolve "tort actions" between the public utility and its customer.  Because this case is not a tort action between the public utility and its customer, § 77-3-6(4) does not apply.

Moreover, even if this subsection applies to Siemens (and it does not), the fact that the PSC cannot provide an administrative remedy for a tort action does not mean that the exhaustion requirement does not apply.  Because the PSC can provide an administrative remedy for the harm

underlying some of the damages being sought by Plaintiffs, Plaintiffs must exhaust that remedy before proceeding with this action.  *See supra* at 2-4.

*          *          *

Plaintiffs seek damages in this case for "overpayment of water services" and "inaccurate overbilling."  Doc. 1 at ¶¶ 38, 42.  But Plaintiffs failed to exhaust two separate administrative remedies available for the alleged overbilling before filing suit.  As a result, this case should be dismissed.  *See Beebe*, 687 So. 2d at 704.

## II.  Plaintiffs are not third-party beneficiaries of the Agreement between Siemens and the City.

Plaintiffs do not dispute that their claims for breach of contract in Count I and injunctive relief/specific performance in Count V should be dismissed if they are not third-party beneficiaries to the Agreement.  Instead, despite clear contractual language to the contrary, Plaintiffs argue that they are third-party beneficiaries because the Agreement includes passing references to "Customers."  That argument fails under settled Mississippi law.

Plaintiffs cite the Mississippi Supreme Court's decision in *Cope v. Thrasher, Inc.*, 231 So. 3d 989 (Miss. 2017), which laid out a three-part test to decide whether an otherwise silent contract confers third-party beneficiary status.  Doc 20 at 9.  But because a "third party's beneficiary status 'must spring from the terms of the contract itself,'" *Cope*, 231 So. 3d at 993, that three-part test is irrelevant where the contract itself disclaims any intent to create third-party beneficiaries.  "Unambiguous clauses that prohibit third parties from being treated as beneficiaries to the contract 'must be accepted as the intent of the parties and enforced as written.'"  *S. Indus. Contractors, LLC v. Neel-Schaffer, Inc.*, 2017 WL 5906041, at *2 (S.D. Miss. Nov. 30, 2017) (quoting *Garrett Enters. Consolid., Inc. v. Allen Utils., LLC*, 176 So. 3d 800, 805–06 (Miss. Ct. App. 2015)).

Article 12.2 of the Agreement, which provides that "[n]othing contained in this Agreement shall be construed to give any rights or benefits to anyone other than [the City] and SIEMENS without the express written consent of both parties," Doc. 15, Ex. 1, at § 12.2, is just that type of unambiguous clause.  As a result, Plaintiffs are not third-party beneficiaries of the Agreement.  *See S. Indus. Contractors*, 2017 WL 5906041, at *2.[2]

Despite Article 12.2, Plaintiffs insist that they are third-party beneficiaries because the Agreement elsewhere references "Customers," "Residential Customers," and "Commercial Industrial Customers."  Doc 20 at 12.  These fleeting references to "Customers," according to Plaintiffs, is "sufficient 'written consent'" to show that Siemens and the City intended to confer on them third-party beneficiary status.  *Id.*  Plaintiffs' argument, however, conflicts with the plain language of Article 12.2.  That provision states unequivocally that "*[n]othing* contained in this Agreement shall be construed to give any rights or benefits to anyone other than [the City] and SIEMENS without the express written consent of both parties." Doc. 15, Ex. 1, at § 12.2 (emphasis added).  Plaintiffs cannot rely on snippets from the Agreement mentioning "Customers" to claim contractual rights when the operative disclaimer expressly provides that "nothing" else contained in the Agreement can be construed to confer those rights.  Indeed, "[c]ourts construing contracts in accordance with Mississippi law must 'enforce contract language as written and give it its plain meaning and ordinary meaning if it is clear and unambiguous.'"  *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 497 (5th Cir. 2019) (citation omitted).  Simply put, the plain meaning of Article 12.2 prohibits Plaintiffs from being accorded third-party beneficiary status.

---

[2] *Accord, e.g.*, *Yarbrough v. Hunt S. Grp., LLC*, 2019 WL 4345990, at *7 (S.D. Miss. Sept. 12, 2019) ("Pursuant to Mississippi law, the 'No Third-Party Beneficiaries' clause must be enforced as written."); *Garrett Enters.*, 176 So. 3d at 805 (holding that a "clear disclaimer of any intent to create third-party rights" in a contract "disposes of any claim that [the contract] grants such rights" to third parties); *Pinnacle Tr. Co., L.L.C. v. McTaggart*, 152 So. 3d 1123, 1128 (Miss. 2014).

**III.     Plaintiffs' negligence claim should be dismissed.**

The Court also should dismiss Plaintiffs' negligence claim because Plaintiffs have not alleged any duty independent of the Agreement, which they cannot enforce.  Furthermore, even if Plaintiffs had rights under the Agreement, they still have not alleged an actionable tort duty.

***First***, Plaintiffs erroneously assert that even if they are not third-party beneficiaries to the Agreement, they need not be in privity with Siemens to bring a negligence claim.  Doc. 20 at 14. Privity is beside the point.  Plaintiffs' negligence claim fails because it relies on a legal duty that Mississippi does not recognize.  When the only duties that a defendant "owe[s] to third parties … are the duties which 'spring from the terms of the contract,'" a plaintiff must be a third-party beneficiary of the contract to assert a negligence claim.  *See, e.g.*, *Parker v. Allstate Ins. Co.*, 2017 WL 4287912, at *3 (S.D. Miss. Sept. 27, 2017) (quoting *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1136 (Miss. 2004)); *accord Doe ex rel. Doe v. Wright Sec. Servs., Inc.*, 950 So. 2d 1076, 1080 (Miss. Ct. App. 2007).  Article 12.2 precludes third-party beneficiary status and forecloses Plaintiffs' negligence claim.

***Second***, Plaintiffs do not dispute that a negligence claim that merely restates a breach of contract claim is not viable under Mississippi law.  Plaintiffs instead argue that they have alleged a tort duty to use reasonable care in performing the Agreement.  But Mississippi recognizes that "not all contractual duties are duties of care," *Clausell v. Borque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015), and so a plaintiff cannot use artful pleading to turn a contract claim into a tort.

Plaintiffs contend that their negligence claim is based "not on [a] contractual promise but the duty to use reasonable care in affirmatively performing that promise."  Doc. 20 at 14–15.  They rely on Paragraph 42 of the Complaint, which alleges that Siemens "negligently breached its duty of ordinary care" in the "deficient performance of its obligations to Plaintiffs and all ratepayers of the City of Jackson's water and sewer authority."  Doc. 1, at ¶ 42.  Those allegations do not change

the fact that Plaintiffs allege contractual duties only.  Indeed, the Complaint itself makes clear that

the only source of the alleged duty of care is the Agreement:

> At all relevant times, Defendant affirmatively undertook numerous obligations
> owed to the ratepayers of the City of Jackson's water and sewer authority, including
> but not limited to the Plaintiffs named herein.  Those obligations included the duty
> to install numerous infrastructure and hardware components such as, but not
> necessarily limited to, water delivery and drainage mains and pipes and the
> installation of properly working water meters in a functioning and workmanlike
> condition.  Defendant further undertook the obligation and accordingly held the
> duty to inspect all components of the water delivery system as installed, upgraded
> and maintained to ensure that those components, including but not limited to water
> mains and water meters, were functioning properly as intended.   Defendant
> accordingly held and holds an ordinary duty of care to the ratepayers of the City of
> Jackson water and sewer authority, including but not limited to the Plaintiffs named
> herein.

*Id.* at ¶ 41.  But if a plaintiff's tort claims "arise from the same source and the same incidents as

do its breach of contract claims," then "[n]o basis independent of the contract exists for finding a

[tort] duty."  *First Tr. Nat'l Ass'n v. First Nat'l Bank of Commerce*, 220 F.3d 331, 336 (5th Cir.

2000); *see also Smith v. Orkin Exterminating Co.*, 791 F. Supp. 1137, 1143–44 (S.D. Miss. 1990)

(dismissing negligence claim where "had it not been for the contract, the defendant would have

had no duty" at all), *aff'd*, 943 F.2d 1314 (5th Cir. 1991).   That is the case here.   Plaintiffs'

complaint alleges that Siemens had "an ordinary duty of care" based on "affirmatively

undert[aking] numerous obligations."  Doc. 1, at ¶¶ 41–42.  But the alleged affirmative obligations

only exist because of the Agreement between the City and Siemens.

Mississippi courts—including this Court—have rejected "tort" allegations like Plaintiffs'

here as improperly-recast contract claims.  *See, e.g.*, *Palmer v. Orkin Exterminating Co.*, 871 F.

Supp. 912, 914 (S.D. Miss. 1994) (Lee, J.), *aff'd*, 71 F.3d 875 (5th Cir. 1995); *Smith*, 791 F. Supp.

at 1143–44; *Furr Mktg., Inc. v. Orval Kent Food Co.*, 682 F. Supp. 884, 886 (S.D. Miss. 1988)

(Lee, J.).  For example, in *Palmer*, the plaintiff alleged that the defendant "negligently breached

[its] contract and negligently failed to treat her house properly" under an exterminating contract.

871 F. Supp. at 914.  Put differently, the plaintiff claimed that the defendant had not used ordinary care in performing a contractual duty to treat her home.  *See id.*  This Court rejected that tort claim, holding that "the negligence which plaintiff attributes to [the defendant] stems directly from the duties imposed by the contract, not from any duty owed to plaintiff independent of the contract." *Id.*  Likewise, in *Furr Marketing*, the plaintiff alleged that the "defendant had a duty to use reasonable care regarding the assigned accounts."  682 F. Supp. at 886.  But this Court held that claim to be merely "a reiteration of the claim for breach of contract, with the additional allegation that defendant breached the contract negligently."  *Id.*

Although Plaintiffs have asserted that Siemens owed a "duty of ordinary care," the Complaint itself makes clear that any such duty arises only from the Agreement.  As a result, Plaintiffs have not alleged a viable independent negligence claim, so the negligence claim must be dismissed.

## IV.   Plaintiffs' fraud claim should be dismissed.

As noted above, Plaintiffs concede that they have not alleged fraud with particularity as required by Fed. R. Civ. P. 9(b) and that they have not alleged reliance.  Doc. 20 at 18–19. Although they now seek leave to amend to fix these deficiencies, they offer no explanation as to why they have not sought leave to amend long before now (despite having been aware of the deficiencies since September 9 when Siemens filed its motion to dismiss) or why they have not attached a proposed amended complaint to their request for leave.

Any amendment to the fraudulent omission aspect of their claim should not be allowed because it would be futile.  Under Mississippi law, "a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted," and "[t]his duty generally arises only where there is a fiduciary relationship between the parties."  *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007).  Plaintiffs have not alleged—and cannot

allege—the existence of any special or fiduciary relationship between them and Siemens, and Plaintiffs thus cannot establish a duty of disclosure. *See Jordan v. Nationwide Trustee Servs., Inc.*, 2014 WL 6982641, at *4 (S.D. Miss. Dec. 9, 2014) (Lee, J.).

## V.    Plaintiff's vicarious liability theory cannot proceed.

Plaintiffs concede that their vicarious-liability claim is not a stand-alone cause of action. But they nonetheless ask this Court to deem the vicarious liability allegations to be incorporated into Plaintiffs' fraud and negligence claims. This Court should reject that request. Plaintiffs assert that they are seeking to hold Siemens liable for the acts of the City's employees. Doc. 20 at 19. Under Mississippi law, "vicarious liability derives solely from the principal's legal relation to the wrongdoer." *McKean v. Yates Eng'g Corp.*, 210 So. 3d 1037, 1046 (Miss. Ct. App. 2015) (quoting *J & J Timber Co. v. Broome*, 932 So. 2d 1, 6 (Miss. 2006)). As a result, "[i]n order for [a defendant] to be held liable for the alleged negligence of [a third party], some relationship must exist between [the defendant] and [the third party], such as an employment relationship or agency relationship that would give rise to vicarious liability or liability based upon *respondeat superior*." *Funches v. Noland*, 2017 WL 4518613, at *3 (S.D. Miss. May 10, 2017). Plaintiffs' Complaint contains no facts from which the Court could conclude that Siemens has a relationship with the City to establish vicarious liability for the acts of the City's personnel. Thus, Plaintiffs' vicarious liability theory is not plausible on its face, and this Court should deny Plaintiffs' request to construe the Complaint to allow that theory to proceed.

## VI.   Plaintiffs' demand for specific performance should be dismissed.

Plaintiffs concede that specific performance is not a stand-alone cause of action, but they still ask this Court to consider specific performance as a remedy that they are seeking in this case. This Court should deny that request for two reasons. First, as explained above, Plaintiffs are not third-party beneficiaries of the Agreement, and thus have no rights under that contract.

Second, Plaintiffs have not alleged that they lack an adequate remedy at law.  Plaintiffs acknowledge that they seek damages in the Complaint, but they argue that a court "may order specific performance along with damages for the defendant's delay in performing the contract." Doc 20 at 20.  That is irrelevant.  Mississippi law is clear that a plaintiff is not entitled to specific performance "where the parties have an adequate remedy at law to recover damages growing out of a party's failure to carry out a contract's terms."  *Tyson Breeders, Inc. v. Harrison*, 940 So. 2d 230, 234 (Miss. 2006).   Nowhere in the Complaint do Plaintiffs allege that the damages that they seek are an inadequate remedy, so specific performance is not an available remedy.  *See id.*

**VII.   Plaintiffs' implied warranty claim should be dismissed.**

Plaintiffs' implied warranty claim should be dismissed with prejudice because the Agreement expressly disclaims all implied warranties.  Doc. 15, Ex. 1, at § 5.8.  Where "[t]he express language of the [contract] bars all implied warranty claims," that plain language "must be enforced unless contrary to law."  *Steel Dynamics Columbus, LLC v. Altech Environment USA Corp.*, 273 F. Supp. 3d 627, 638 (N.D. Miss. 2017).

Citing Miss. Code §§ 11-7-18 and 75-2-316, Plaintiffs erroneously contend that the Agreement's warranty disclaimer is unenforceable because the Agreement is a contract for the sale of goods.  Doc 20 at 24–25.  Even if one puts aside whether the Agreement is for the sale of goods, rather than services,[3] both Miss. Code §§ 11-7-18 and 75-2-316, by their terms, apply only to sales of consumer goods.  *See* Miss. Code § 11-7-18 (applying "in a sale to a consumer … of consumer goods"); *id.* § 75-2-316(3) (applying to "a seller of consumer goods").

This case does not involve a sale of consumer goods to a consumer.  Mississippi law defines a consumer as "an individual who enters into a transaction primarily for personal, family, or

---

[3] *See Smith*, 791 F. Supp. at 1141 (where contract is one primarily for services, statutes prohibiting limitations on liability and remedies for breach of warranties are not applicable).

household purposes."  Miss. Code § 75-1-201(b)(11).  It likewise defines "consumer goods" as "goods that are used or bought for use primarily for personal, family, or household purposes."  *Id.* § 75-9-102(a)(23).  The Agreement is a contract between the City and Siemens, under which Siemens provided services to the City to repair and upgrade extensive infrastructure, replaced individual water meters, and implemented a new automated billing system.  Doc. 1, at ¶ 11.  The City is not an "individual," and any goods that Siemens provided to the City were not for "personal, family, or household purposes."  Because the Agreement is not a contract for the sale of consumer goods to a consumer, the Agreement's "express language" "must be enforced."  *Steel Dynamics*, 273 F. Supp. 3d at 639 (holding that warranty disclaimer was enforceable where purchaser was "a non-consumer and … the [goods] are non-consumer goods").[4]

The contractual warranty disclaimer is enforceable under Mississippi law, so Plaintiffs' implied warranty claims should be dismissed.[5]

---

[4] Plaintiffs' reliance on Miss. Code § 75-2-316 is also misplaced because that section did not exist when the City and Siemens entered into the Agreement.  Section 75-2-316 was enacted in 2014.  Act of July 1, 2014, 2014 Miss. Laws Ch. 312 (H.B. 96) (creating Section 75-2-316).  But Siemens and the City entered into the Agreement in 2013.  Doc. 1, at ¶ 12.  "Mississippi courts have 'continuously followed the rule that statutes will be construed to have a prospective operation only, unless a contrary intention is manifested by the clearest and most positive expression.'"  *Steel Dynamics*, 273 F. Supp. 3d at 639 n.18 (quoting *Hudson v. Moon*, 732 So.2d 927, 930–31 (Miss. 1999)).  Likewise, the Mississippi Supreme Court has long recognized that "[t]he nature, construction, and effect of a contract are governed by the laws existing when and where it was made … and, in this respect, the rights of the parties under the contract are beyond the legislative power."  *Price v. Harley*, 107 So. 673, 674 (Miss. 1926).

[5] When the Agreement was signed, Miss. Code § 75-2-719(4) restricted the ability of a seller to limit remedies that "would deprive the buyer of a remedy" for breaches of implied warranty.  But § 75-2-719 "covers only disclaimer of *remedies* for breach of implied warranties," and it "does not prohibit disclaimer of *liability* for such warranties."  *Steel Dynamics*, 273 F. Supp. 3d at 642 (emphasis added).

**VIII.   Plaintiffs' MCPA claims should be dismissed with prejudice.**

Although Plaintiffs request leave to dismiss their Mississippi Consumer Protection Act ("MCPA") claims without prejudice, those claims should be dismissed with prejudice.  The MCPA provides a right of action to "any person who purchases or leases goods or services primarily for personal, family or household purposes," Miss. Code § 75-24-15(1), and so a plaintiff asserting an MCPA claim must allege a "purchase" of goods.  *See, e.g.*, *Humphrey v. Citibank, NA*, 2013 WL 5407195, at *7 (N.D. Miss. Sept. 25, 2013); *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 666–67 (S.D. Miss. 2007).  Plaintiffs have not alleged—and the allegations of the Complaint make clear that they cannot allege—that they purchased anything from Siemens.  Accordingly, dismissal with prejudice is proper.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' complaint should be dismissed in its entirety.


Respectfully submitted,

*/s/ Roy D. Campbell, III*
Roy D. Campbell, III
BRADLEY ARANT BOULT CUMMINGS LLP
188 E. Capitol Street, Suite 1000
Jackson, MS 39215
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
rcampbell@bradley.com

Matthew H. Lembke *(Pro Hac Vice)*
Tiffany J. deGruy *(Pro Hac Vice)*
Stanley E. Blackmon *(Pro Hac Vice)*
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
mlembke@bradley.com
tdegruy@bradley.com
sblackmon@bradley.com

Kenneth M. Perry *(Pro Hac Vice)*
KEN PERRY LAW FIRM, LLC
1615 Financial Center
404 20th Street North
Birmingham, AL 35203
Telephone: (205) 778-2001
Facsimile: (205) 224-4455
kp@kenperrylawfirm.com

*Counsel for Defendant Siemens Industry, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Roy D. Campbell, III*
OF COUNSEL