UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


POINDEXTER PARK AFTER-SCHOOL                    PLAINTIFFS
CLUB, ET AL.

VS.                       CIVIL ACTION NO. 3:19CV474TSL-LRA

SIEMENS INDUSTRY, INC.                           DEFENDANT

                MEMORANDUM OPINION AND ORDER

     This cause is before the court on the motion of defendant

Siemens Industry, Inc. (Siemens) to dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiffs

Poindexter Park After-School Club, Inc. (Poindexter Park),

William S. Kellum, Charles Jordan and Belinda Chase,

individually and on behalf of all other similarly-situated

plaintiffs, have responded in opposition to the motion.  The

court, having considered the memoranda of authorities submitted

by the parties, concludes that Siemens' motion is well-taken and

should be granted.

     Plaintiffs are residents of the City of Jackson,

Mississippi, who receive water and sewer services from the City.

They have brought this action against Siemens asserting several

contract and tort-based claims grounded on or arising from

Siemens' alleged failure to adequately discharge its obligations

under a multi-year contract with the City to improve both the

City's provision of water and sewer services and its billing

                            1

system for these services.[1]  Their complaint is pled in nine

counts, as follows:  Count I - Breach of Contract; Count II -

Negligence; Count III - Fraud and Fraudulent Concealment; Count

IV - Vicarious Liability of Defendant; Count V - Injunctive

Relief and Specific Performance; Count VI - Punitive Damages and

Attorneys' Fees; Counts VII and VIII - Breach of Implied

Warranties; and Count IX - Unfair and Deceptive Trade Practices.

Siemens seeks dismissal of all these claims.[2]

Factual Allegations/Background

In January 2013, the City of Jackson entered into a $90

million dollar, multi-year performance agreement with Siemens by

which Siemens was responsible for extensive water and sewer

infrastructure repairs and upgrades; replacement of obsolete

individual water meters with state-of-the-art technology; and

---

[1]   The named plaintiffs have brought this as a putative class action for themselves and on behalf of all Jackson residents who receive water and sewer services from the City.  They seek damages from Siemens, a Delaware corporation, in excess of $5,000,000 in the aggregate and assert jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

[2]   In response to Siemens' motion to dismiss, plaintiffs have requested leave to voluntarily dismiss without prejudice Count IX.  Moreover, they concede that their "vicarious liability" count does not set forth a separate cause of action but rather a basis for imposing liability on Siemens for the actions of its employees/agents; and they acknowledge that the counts for injunctive relief and specific performance and for punitive damages and attorneys' fees likewise are not causes of actions but rather requests for relief based on the substantive causes of action asserted in the remaining counts.

implementation of an updated billing service.  According to the complaint, Siemens represented to the City that the contract would more than pay for itself over time with energy savings of over $120 million.  Plaintiffs allege that it was the stated intent, both in the agreement as executed and as reflected by public statements by the City, "that the services and hardware implemented by Defendant would result in more accurate and timelier billings to ratepayers which would accurately reflect the actual water consumption of said ratepayers."  The project, however, was plagued by technical problems, including substandard or incorrectly installed water meters, which caused problems with accurate measuring and billing for water usage by account holders.  Plaintiffs allege that since Siemens' new billing system went live in 2015, it has caused "many account holders to receive inexplicably high bills that do not reflect their actual water usage.  In other instances, account holders may receive no bill at all for significant periods of time, only to eventually receive an unusually high bill based on months of purported water usage."

From 2013 to 2018, the City and Siemens entered into several amendments in an effort to get the agreement back on track.  Ultimately, however, in June 2019, the City sued Siemens and others in the Circuit Court of Hinds County, asserting

numerous claims, including for breach of contract and fraud. The City's complaint against Siemens alleged:

> Instead of delivering more timely and accurate water bills for customers and additional revenue for the City, the $90 million dollar water system is losing $2 million in revenue each month and has lost more than $20 million in revenue over the last year alone.  The new meter and billing system has failed to even cover the operations and maintenance expense incurred by the City to cover the flawed system.

The state court record reflects that the City and Siemens entered into a settlement of that case in February 2020.

Plaintiffs herein allege that due to the problems with the Siemens-installed water-sewer/billing system, each of them has been significantly overcharged for water-sewer usage.[3] Plaintiff Kellum claims because of his unexplainable balance of over $10,000, which he is in the process of appealing to the City Attorney,[4] he has had to pay $100 to avoid suspension of his service.  Plaintiffs Chase and Jordan allege that they have unexplainable balances of over $9,000 and $4,100, respectively, and have had to pay additional amounts on their monthly bills to

---

[3]     On June 18, 2018, a group of ratepayers sued the City in Hinds County Chancery Court, seeking, among other things, a preliminary injunction prohibiting the City from discontinuing water service until its suit against Siemens was resolved.  The factual allegations in the complaint herein extensively track the allegations set out in the chancery action.  See In re: City of Jackson Water Billing System, 25CH1:19CV782.  As of today, this case remains pending.

[4]     See infra pp. 7-8, 13-15.

4

cover the overcharges.  And plaintiff Poindexter Park alleges it "has been receiving unexplainable balances into the thousands of dollars"; it "has given up on receiving an accurate bill from the City of Jackson and pay[s] a monthly usage rate equal to the pre-Siemens average of its monthly bill."  They demand money damages, including amounts attributable to overpayment for water, alleged economic losses caused by the loss of reliable service, and costs associated with disputing their erroneous bills.

Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted, "a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level'." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In other words, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted).  Generally, a court ruling on a 12(b)(6) motion may rely on the

complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).[5]

Administrative Exhaustion

Under Mississippi law,[6] "generally, a complainant must exhaust the administrative remedies available to him before resorting to the courts for resolution. . . ." Howard v. TotalFina E&P USA, Inc., 899 So. 2d 882, 888 (Miss. 2005) (citing Donald v. Amoco Prod. Co., 735 So. 2d 161, 177 (Miss. 1999)); see also Pub. Employees Ret. Sys. of Mississippi (PERS) v. Hawkins, 781 So. 2d 899, 907 (Miss. 2001) ("[A]dministrative remedies which provide plain, speedy, adequate and complete relief must be exhausted.") (quoting Hood v. Mississippi Dep't of Wildlife Conservation, 571 So. 2d 263, 268 (Miss. 1990)). Exhaustion is required even where "the applicable statutes and

---

[5]    Siemens' arguments regarding the putative claims for breach of implied warranty are premised on the disclaimers set forth in the agreement, which is specifically referenced by and central to the complaint and which is attached as an exhibit to Siemens' motion to dismiss.

[6]    As a court exercising diversity jurisdiction, this court applies Mississippi's substantive law, including its law requiring exhaustion. See Lamar Co., L.L.C. v. Mississippi Transp. Comm'n, 786 F. App'x 457, 460 (5th Cir. 2019) (stating that "we treat administrative exhaustion as substantive for Erie purposes and therefore apply Mississippi law").

regulations [do] not mandate exhaustion or 'provide for or prohibit private causes of action.'" Ass'n Cas. Ins. Co. v. Allstate Ins. Co., 507 F. Supp. 2d 610, 620 (S.D. Miss. 2007), amended, No. 3:07CV525KS-JCS, 2008 WL 11506099 (S.D. Miss. Jan. 17, 2008) (quoting Donald, 735 So. 2d at 177).  But "if an adequate administrative remedy is not provided, then the doctrine of exhaustion is not applicable." Howard, 899 So. 2d at 888 (citing Donald, 735 So. 2d at 177); Miss. Dep't of Env. Quality v. Weems, 653 So. 2d 266, 276 (Miss. 1995) (concluding that exhaustion was not required because it did not afford the plaintiff "a plain, speedy, adequate and complete remedy"). "[W]hen 'there is reasonable doubt as to the availability and adequacy of the administrative remedy,' the Mississippi Supreme Court has not required administrative exhaustion." Lamar Co., L.L.C. v. Mississippi Transp. Comm'n, 786 F. App'x 457, 461 (5th Cir. 2019) (quoting Campbell Sixty-Six Express, Inc. v. J. & G. Express, Inc., 244 Miss. 427, 141 So. 2d 720, 726 (1962)).

    Siemens contends that plaintiffs had available administrative remedies.  Pursuant to Mississippi Code Annotated § 77-3-6(1), they could have filed a petition with the Mississippi Public Service Commission (PSC) challenging their water-sewer bills and/or they could have appealed to the City Attorney in accordance with the City's "Water and Sewer Billing Customer Bill of Rights."  It asserts that since they failed to

exhaust these available administrative remedies, then their claims herein must be dismissed.[7]   Plaintiffs, however, maintain that neither the PSC nor the City Attorney or City Council has jurisdiction over their claims, and that the latter could not provide an adequate remedy in any event.   In the court's opinion, administrative exhaustion was not required in this case.

Although the PSC's authority with respect to municipally-owned or operated utilities is quite limited,[8] it is authorized by statute to investigate, review and arbitrate "[a]ny dispute between a municipally-owned or operated public utility and a customer of such public utility with regard to billing and/or services in excess of . . . $2,500 . . . upon petition filed therefore with the commission by such public utility or customer."   Miss. Code Ann. § 77-3-6(1).[9]   As Siemens is not "a

---

[7]    The Mississippi Supreme Court has stated that the "question of the exhaustion of administrative remedies is a jurisdictional question…."   See Durr v. City of Picayune, 185 So. 3d 1042, 1048 (Miss. 2015).

[8]    Mississippi Code Annotated § 77-3-1 exempts municipally-owned or operated public utilities from regulation by the PSC "except as to extension of utilities greater than one (1) mile outside corporate boundaries after March 29, 1956."   See Mississippi Pub. Serv. Comm'n v. City of Jackson, 328 So. 2d 656, 658 (Miss. 1976) (citing Miss. Code Ann. § 77-3-1).

[9]    There are limits to this authority.   Under the statute, the PSC "shall not commence any investigation or proceedings" if, at the time a customer or public utility files a petition, "suit has been filed in any court of this state or of the United

municipally-owned or operated utility," the PSC's authority under this statute does not extend to any dispute between plaintiffs and Siemens.  Siemens does not deny this, and in fact, so far as the court can tell, Siemens does not contend that plaintiffs had any available administrative remedies *against Siemens*.[10]  Rather, Siemens' position, as the court understands it, is that plaintiffs were required to exhaust their available administrative remedies *against the City of Jackson* before they could file the present lawsuit *against Siemens* because "the outcome of the administrative process (with the City) could have an impact on the amount of the plaintiff[s'] damages sought in [this] action against [Siemens] (or [could] even eliminate the plaintiff[s'] standing to sue [Siemens] at all)" (first parenthetical added).[11]  In connection

---

States with regard to the subject matter of the dispute and in which such public utility and customer are parties", and "such petition shall be immediately dismissed if any such suit is filed after filing of the petition with the commission."  Miss. Code Ann. § 77-3-6(1).  Further, the PSC's authority under the statute "shall not extend to tort actions."  Miss. Code Ann. § 77-3-6(4).

[10]    Siemens describes itself as a "third party" when describing the administrative process; states that plaintiffs' filing of a petition with the PSC "for review of the City's alleged overbilling" was an available administrative remedy; and argues that an administrative agency's lack of jurisdiction over a third party does not relieve plaintiffs of the requirement that they exhaust available administrative remedies.

[11]    Notably, the stated aim of § 77-3-6 is for the PSC to "perform such duties as it deems reasonable and likely to result

with this argument, Siemens cites Chevron U.S.A., Inc. v. Smith, 844 So. 2d 1145 (Miss. 2002), Miller v. Mississippi Resources, LLC, Cause No. 5:17-CV-41-DCB-MTP, 2018 WL 934827, at *3 (S.D. Miss. Feb. 16, 2018), Walls v. Franklin Corp., 797 So. 2d 973 (Miss. 2001), and Whitehead v. Zurich American Insurance Co., 348 F.3d 478 (5th Cir. 2003), which it describes as "controlling Mississippi cases" on the point that "a third party not subject to the administrative body's jurisdiction can rely on an opposing party's failure to exhaust administrative remedies" where the specific disputed issue is within the jurisdiction of an administrative agency.  In the court's opinion, none of these cases supports Siemens' position.[12]

In Smith, the court held that before landowners could sue Chevron (and/or its successors) for damages to their property resulting from oilfield pollution caused by Chevron, they were required to first seek restoration of the property from the State Oil and Gas Board.  844 So. 2d at 1147-48 (citing Donald

---

in settlement of the dispute *without commencement of litigation between the public utility and the customer.*"  Miss. Code Ann. § 77-3-6(2) (emphasis added).  Its aim is not to avoid the commencement of litigation by customers of the public utility against others.

[12]    In its opening brief, Siemens merely cited the cases but did not explain how it contended they supported its position.  Its rebuttal brief is somewhat more illuminating.

v. Amoco, 735 So. 2d at 177, as "binding precedent in cases where plaintiffs seek to have oil producers clean up byproduct pollution").  See also Miller v. Mississippi Res., LLC, No. 5:17-CV-41-DCB-MTP, 2018 WL 934827, at *3 (S.D. Miss. Feb. 16, 2018) (holding that administrative exhaustion before Oil and Gas Board was required before landowner plaintiff could file tort suit seeking relief, including damages, for contamination caused by the defendant's oil and gas production activities).  Neither of these cases involved a claim against or dispute involving a third party that was not subject to the jurisdiction of the administrative agency.  On the contrary, in both cases, the company alleged to be responsible for contamination of the property from its production activities was the defendant in the lawsuit *and* the party against whom any request for an administrative remedy would have been directed; and in both cases, the defendant was plainly subject to the Oil and Gas Board's jurisdiction.  See Smith, 844 So. 2d at 1148 (recognizing jurisdiction and authority of Oil and Gas Board over all persons and property necessary to enforce its regulations and to take actions necessary to enforce its regulations, including ordering violators to pay costs of clean-up, restoration, etc.) (citing Donald, 735 So. 2d at 177).

    Walls involved a bad faith claim by a workers' compensation claimant against her employer and its workers' compensation

carrier for failing and refusing to reimburse her for what she contended were reasonable and necessary medical expenses.  797 So. 2d at 974.  The court, based on the principle in bad faith cases that "[a] prerequisite to the award of punitive damages is the determination that the plaintiff is entitled to contractual damages", id. at 976 (quotation marks and citation omitted), held that before Walls could pursue her bad faith suit, she would first have to secure a ruling by the Workers' Compensation Commission that she was entitled to reimbursement since, under Mississippi workers' compensation law, the Commission has exclusive original jurisdiction to hear and determine claims for benefits, id. at 976 (citing Miss. Code Ann. § 71-3-15); Knight Props., Inc. v. Sanders, 77 So. 3d 522, 523 (Miss. Ct. App. 2011) (citation omitted) (recognizing Commission's exclusive jurisdiction over benefits decisions).  See also Whitehead v. Zurich Am. Ins. Co., 348 F.3d 478, 481-82 (5th Cir. 2003) ("Walls requires that the Mississippi Workers' Compensation Commission make a determination as to whether Whitehead's claimed benefits are reasonable and necessary before he can commence a civil action for denial of benefits.").

As in Smith and Miller, Walls and Whitehead were not lawsuits against third parties over which the relevant administrative agency had no jurisdiction or against which the plaintiffs had no available administrative remedy.  In Walls,

the Commission had ordered the employer and its workers'
compensation carrier -- both of which the claimant later sued --
to cover her reasonable and necessary medical expenses.  797 So.
2d at 974.  In Whitehead, the claimant sued the insurer, which
had filed the petition to controvert in the workers'
compensation proceedings.  348 F.3d at 481.

Again, none of these cases involved a third party that was
not subject to the administrative body's jurisdiction.
Moreover, nothing in these cases even arguably suggests that a
defendant, such as Siemens, over which an administrative agency
has no jurisdiction, may secure dismissal of litigation brought
against it on the basis that the plaintiffs failed to exhaust
administrative remedies against a nonparty on the theory that
their administrative remedy against the nonparty, if pursued,
might have "impacted" the extent of their harm/amount of their
damages.  Siemens has offered no authority that would support
that contention.[13]

---

[13]     The court in Smith did state that "plaintiffs must seek
restoration from the Mississippi Oil and Gas Board before a
court can properly assess the appropriate measure of damages."
Id. at 1148.  And in Walls and Whitehead, the viability of a
claim for bad faith was dependent on the claimant's success in
the workers' compensation administrative proceeding.  See Walls,
797 So. 2d at 977 and Whitehead, 348 F.3d at 481.  But those
cases did not involve a third party asserting failure to exhaust
against a nonparty as a basis for dismissal.  Arguably, a
defendant in Siemens' position could reasonably assert a failure
to mitigate defense based on a plaintiff's failure to pursue
available administrative remedies that could have reduced or

By executive order issued by Jackson Mayor Chokwe Lumumba in September 2018, the City adopted a "Water and Sewer Customer Bill of Rights" in which it acknowledged the problems plaguing its water-sewer/billing system and pledged to customers that it would use its best efforts to, among other things, provide timely and accurate water-sewer bills, "correct any errors on [customers'] bill[s]", work with them on payment plans to avoid disconnection, and provide timely notice of a pending disconnection, which would include notice of a customer's

> right to appeal the notice of pending disconnection to the Office of the City Attorney.  If the appeal to the City Attorney is not favorable, the customer may go through a final appeal which may be reviewed by the Jackson City Council.  The City of Jackson will not disconnect your service for failure to pay the amount in dispute until the appeal has been resolved.

Siemens contends this was yet another administrative remedy available to plaintiffs and that dismissal is in order based on their failure to exhaust this remedy.  However, this argument fails for the same reason Siemens' argument as to plaintiffs' alleged failure to exhaust under the PSC procedure fails, and for additional reasons, as well.  The City offered to allow customers who received disconnection notices to appeal; but only one of the named plaintiffs is alleged to have received such a

_____

eliminated his damages.  But it cannot secure dismissal of the claims against it on the basis of their alleged failure to exhaust.

notice.  Thus, this supposed avenue for review was not available to all the plaintiffs.  Moreover, the Bill of Rights contained no detail whatsoever as to how the appeal process was to work, what the appeal would entail, or the nature of any relief that was contemplated or available.  On its face, it does not appear to provide a plain, speedy, adequate and complete remedy.

For all of the foregoing reasons, the court rejects Siemens' motion to dismiss on account of plaintiffs' alleged failure to exhaust administrative remedies.

Breach of Contract

While plaintiffs are not parties to the City's contract with Siemens, they have sued for breach of contract on the theory that they are third-party beneficiaries of the contract. Siemens asserts that under the express terms of the contract, plaintiffs are not third-party beneficiaries and as such have no standing to pursue their claim for breach of contract, or their claim for breach of implied warranties.  While this is not a valid basis for dismissal of plaintiffs' claim for breach of implied warranties, see May v. Ralph L. Dickerson Const. Corp., 560 So. 2d 729, 730-31 (Miss. 1990) (pursuant to Miss. Code Ann. § 11-7-20, privity not required to maintain action for breach of warranty), Siemens' argument is correct as to plaintiffs' claim for breach of contract.

Under Mississippi law, "'[a] third person may enforce a promise made for his benefit even though he is a stranger to the contract or to the consideration.'" Cope v. Thrasher Constr., Inc., 231 So. 3d 989, 993 (Miss. 2017) (quoting Miss. High School Activities Ass'n, Inc. v. Farris, 501 So. 2d 393, 395-96 (Miss. 1987) (citation omitted)). However, "[o]ne who is not a party to a contract 'cannot maintain an action upon [the] contract merely because he would receive a benefit from its performance or because he is injured by a breach thereof.'" Woodring v. Robinson, 892 F. Supp. 2d 769, 774 (S.D. Miss. 2012) (quoting Hartford Acc. Indem. Co. v. Hewes, 190 Miss. 225, 199 So. 93, 95 (1940)). Rather, "to enforce the promise, the third-party's beneficiary status must spring from the terms of the contract itself." Cope, 231 So. 3d at 993 (internal quotation omitted).

To determine third-party beneficiary status, Mississippi courts consider the following:

> (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

Simmons Housing, Inc. v. Shelton, 36 So.3d 1283, 1286 (Miss. 2010) (internal quotations omitted). Importantly,

16

"[u]nambiguous clauses that prohibit third parties from being treated as beneficiaries to the contract 'must be accepted as the intent of the parties and enforced as written.'"  S. Indus. Contractors, LLC v. Neel-Schaffer, Inc., No. 1:17CV255-LG-JCG, 2017 WL 5906041, at *2 (S.D. Miss. Nov. 30, 2017) (quoting Garrett Enters. Consol., Inc. v. Allen Util., LLC, 176 So. 3d 800, 805-06 (Miss. Ct. App. 2015)).

Siemens' contract with the City declares in § 12.2: "Nothing in this Agreement shall be construed to give any rights or benefits to anyone other than the [City] and Siemens without express written consent of both parties."  Despite this apparently clear pronouncement, plaintiffs argue that the contract, when considered in its entirety, does not unambiguously preclude their being found to be third-party beneficiaries.  In this vein, they note that the contract contains several references to "residential customers" and "commercial and industrial customers", and they argue that the purpose of the contract was obviously to benefit the City's public utility customers, in whose welfare Siemens had an obvious interest since without them, the City would have had no need for its contract with Siemens.  See supra Simmons Housing, 36 So. 3d at 1286.  In the court's opinion, however, none of this creates any ambiguity in the face of the unequivocal language in 12.2 that "*nothing* in this Agreement shall be

17

construed to give rights to anyone other than" the contracting parties. (Emphasis added).  As plaintiffs are not third-party beneficiaries of the contract, their breach of contract claim will be dismissed.[14]

### Breach of Implied Warranties

Plaintiffs have undertaken to assert claims for breach of implied warranties of merchantability and fitness for a particular purpose pursuant to Miss. Code Ann. §§ 75-2-314 and 315, respectively.  The gist of their claim appears to be that Siemens, a manufacturer and seller of water meters, breached these warranties by selling the City defective water meters.[15]

---

[14]   Restatement (Second) of Contracts § 313(2) cmt. a notes that government contracts "often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."  See Interface Kanner, LLC v. JPMorgan Chase Bank, N.A., 704 F.3d 927, 933 (11th Cir. 2013) (citing Restatement (Second) of Contracts § 313(2)).

[15]   Plaintiffs allege:
Defendant designed, marketed, sold, and installed water infrastructure for the use of the ratepayers of the City of Jackson.  Defendant impliedly warranted that its products were properly designed, marketed, sold and installed and the designs and materials were proper and of workmanlike quality.  Defendant knew and intended that the water system infrastructure would be used to measure water usage and perform billing for Plaintiffs and for the proposed class.  Plaintiffs and the proposed Class all purchased water via meters having the defects alleged herein.  Defendant had a duty to disclose the risks involved with the water system infrastructure and to not put defective products on the market.  The defects, as alleged herein, were not an open and obvious risk or risk that

Siemens contends that plaintiffs' claims must be dismissed because its contract with the City expressly disclaims all implied warranties.[16]

Under the terms of Siemens' contract with the City, Siemens was required to furnish certain equipment, including water meters, as to which Siemens warranted the following:

> Unless otherwise agreed, all Equipment shall be new and of good quality.  Until one year from the date the equipment is installed, all Equipment manufactured by Siemens or bearing its nameplate will be free from defects in material and workmanship arising from normal use and service.

The contract further recited:

_____

> was a matter of common knowledge.  The design and installation of the water meter infrastructure was so unreasonable that a person, aware of the relevant facts, would not use a product of this design.  But for Defendants' [sic] breach of implied warranty, Plaintiffs and the proposed class would not have sustained damages.  Plaintiffs have suffered damages as a proximate and foreseeable result of Defendant's fraudulent concealment of numerous and myriad defects of its performance.

[16]    Siemens contends its contract with the City is a "services" contract but offers no argument or authority on this issue. Siemens' contract with the City required it to both perform services and furnish goods.  The Mississippi Supreme Court has held that "in such a mixed transaction, whether or not the contract should be interpreted under the UCC or our general contract law should depend upon the nature of the contract and also upon whether the _dispute_ in question primarily concerns the goods furnished or the services rendered under the contract." J.O. Hooker & Sons, Inc. v. Roberts Cabinet Co., 683 So. 2d 396, 400 (Miss. 1996).  Because the dispute at issue relates primarily to the allegedly defective water meters, the court concludes that the UCC applies.

19

THE EXPRESS LIMITED WARRANTIES PROVIDED ABOVE ARE IN
LIEU OF AND EXCLUDE ALL OTHER WARRANTIES, STATUTORY,
EXPRESS, OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY
WARRANTY OF MERCHANTABILITY OR FITNESS FOR A
PARTICULAR PURPOSE, WHICH ARE HEREBY EXPRESSLY
DISCLAIMED.

Plaintiffs assert that Siemens' purported disclaimer is invalid
because its sale of the water meters was a sale of "consumer
goods", and Mississippi law, with limited exceptions not
applicable here, prohibits any "limitation of remedies or
disclaimer of liability as to any implied warranty of
merchantability or fitness for a particular purpose in a sale to
a consumer, as defined in Section 75-1-201(b)(11), of consumer
goods, as defined in Section 75-9-102(a)(23)".  Miss. Code Ann.
§ 11-7-18.  This prohibition "may not be waived or varied by
agreement." Id.  Clearly, however, Siemens' sale of water
meters to the City of Jackson, a municipal corporation, was not
the sale of "consumer goods" to a "consumer."

Section 75-1-201(b)(11) defines "consumer" as an
"individual who enters into a transaction primarily for
personal, family, or household purposes."  Section 75-9-101(23)
defines "consumer goods" as "goods that are used or bought for
use primarily for personal, family, or household purposes."
Plaintiffs submit that the water meters furnished by Siemens
under its agreement with the City are "consumer goods" because
the water meters are the means by which the City's residential

20

water customers acquire water for household use.  But while
water, in a residence, may be primarily for personal, family or
household purposes, the water *meters* which t*he City* acquired
from Siemens cannot legitimately be found to be primarily for
personal, family or household purposes.  Instead, the meters are
used by the City to measure both its residential and commercial
customers' water usage for the purpose of charging them for that
usage.  Siemens was thus free to disclaim any implied warranties
in its contract with the City; and since it explicitly did so,
plaintiffs putative breach of implied warranty claims fail as a
matter of law and will therefore be dismissed.[17]

---

[17]    Although Siemens seeks dismissal of these claims solely on
the basis that it validly disclaimed any implied warranties, it
is clear that the complaint does not state a viable claim for
breach of any implied warranty.
    Plaintiffs make only a conclusory allegation that the water
meters were defective; it lacks any factual allegation regarding
the nature of any defect which purportedly rendered the meters
unmerchantable.  See SeaHorn Investments, LLC v. Goodman Mfg.
Co., L.P., No. 1:15CV311-HSO-JCG, 2015 WL 13091130, at *5 (S.D.
Miss. Dec. 28, 2015), aff'd sub nom. Seahorn Investments, L.L.C.
v. Goodman Mfg. Co., L.P., 667 F. App'x 452 (5th Cir.
2016)(granting defendant's 12(b)(6) motion and stating "[o]ther
than its conclusory averment that 'the Goodman Products were not
merchantable at the time they were sold to Plaintiff, as they
did not satisfy a minimum level of quality,' . . . the Complaint
does not contain sufficient facts indicating that the HVAC units
were unmerchantable at the time of sale.").  Further, there is
no allegation whatsoever that plaintiffs provided notice to the
seller of their injury.  See Little v. Smith & Nephew, Inc., No.
1:15-CV-00028-GHD, 2015 WL 3651769, at *12 (N.D. Miss. June 11,
2015) ("To survive a Rule 12(b)(6) motion [on claim for breach
of implied warranty], a plaintiff is required to plead specific
facts that he provided such notice."); SeaHorn Investments, 2015
WL 13091130, at *5 (stating that "[i]n the absence of sufficient

Fraud/Fraudulent Concealment

As the basis for their claim of fraud/fraudulent concealment, plaintiffs allege the following:  (1) Siemens knew or should have known that the water meters it installed were obsolete and defective and not of the type or quality required by its contract with the City and yet represented to the City and the public at large that the meters were conforming and/or concealed the fact that they were nonconforming; (2) Siemens knew the billing servicing software it sold and installed was defective yet actively represented to the City and the public at large that the software conformed to the contract; and (3) Siemens "deliberately concealed or suppressed numerous material facts relevant to the implementation of the water and

---

factual allegations that any notice or opportunity to cure was provided, the Complaint does not properly state a claim for breach of the implied warranty of merchantability under Mississippi law.").

As to the alleged breach of the implied warranty of fitness for a particular purpose, the complaint contains no allegation that the City purchased water meters from Siemens to be used other than for their ordinary purpose.  Instead, it specifically alleges that the water meters were used for their ordinary purpose, measuring water usage.  See Watson Quality Ford, Inc., 999 So. 2d at 835 (stating that "no claim for breach of the implied warranty of fitness for a particular purpose will lie when a product is to be used for its ordinary purpose.") (citing Ford Motor Co. v. Fairley, 398 So. 2d 216, 219 (Miss. 1981) ("Neither was there any breach of an implied warranty of fitness for a particular purpose since the automobile was purchased for a very ordinary purpose.")).

sewer system" with "the intention that plaintiffs be misled . . . ."

In Mississippi, the elements of a cause of action for fraud are as follows:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

Waston Labs., Inc. v. State, 241 So. 3d 573, 584 (Miss. 2018). Rule 9 of the Federal Rules of Civil procedure requires that "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard,

> the complaint must contain factual allegations stating the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994) (alteration in original) (citation omitted). In other words, to properly allege fraud under Rule 9(b), the plaintiff must plead the who, what, when, where, and why as to the fraudulent conduct. See id.

Matter of Life Partners Holdings, Inc., 926 F.3d 103, 117 (5th Cir. 2019). Since a charge of fraud by concealment is premised on the existence of a duty to disclose the information claimed to have been suppressed, see Poe v. Summers, 11 So. 3d 129, 134 (Miss. Ct. App. 2009), the complaint must include facts that

demonstrate the existence of a duty, see Ashcroft, 556 U.S. at 678.  In addition, it must contain facts to support a finding that the plaintiffs' reliance on any misrepresentation or concealment was reasonable or justified.  See Carter v. Union Sec. Life Ins. Co., 148 F. Supp. 2d 734, 736 (S.D. Miss. 2001) (ordering dismissal where complaint was void of factual allegations to support reliance element of fraud claim). Defendant seeks dismissal of plaintiffs' fraud claim, contending they have failed with respect to each of these pleading requirements.

    In response, plaintiffs "agree [with Siemens] that the current operative Complaint is thin as to the 'who, what, where and why," and that Siemens' misrepresentation is not properly alleged.  In light of these admitted deficiencies, plaintiffs request that they be allowed to amend to fill in the necessary details.  However, not only have plaintiffs failed to provide a proposed amended pleading, as the local rules require on any motion to amend, see Rule 7(b)(2), Uniform Local Rules for the Northern and Southern Districts of Mississippi, but they have not even hinted as to what additional rehabilitative factual allegations they could or would make if allowed to amend.  In fact, in the face of Siemens' targeted arguments regarding their failure to identify a factual basis for any reasonable reliance by them on any alleged misrepresentation, and their failure to

set forth facts in support of a duty by Siemens to disclose any allegedly suppressed material facts, plaintiffs offer no response at all.

Rule 15 provides that "leave to amend is to be freely given as justice requires.  But under these circumstances, the court concludes that plaintiffs' request to amend should be denied.  See Goldstein v. MCI WorldCom, 340 F.3d 238, 255 (5th Cir. 2003) (finding no abuse of discretion in district court's denial of leave to amend where plaintiffs, at the end of their response to defendants' motion to dismiss, "almost as an afterthought, . . . tacked on a general curative amendment request," and failed to demonstrate how they would replead scienter more specifically if given an opportunity, did not proffer a proposed amended complaint, and did not suggest in their responsive pleading any additional facts not initially pled that could, if necessary, cure pleading defects raised by defendants); McKinney v. Irving Indep. Sch. Dist., 309 F.3d 308, 315 (5th Cir. 2002) (finding district court did not abuse discretion in denying leave to amend where, among other things, plaintiffs failed to alert court as to substance of any proposed amendment).

Negligence

In the negligence count of their complaint, plaintiffs allege that Siemens

25

undertook numerous obligations owed to the [City's water-sewer customers], including "the duty to install numerous infrastructure and hardware components such as, but not necessarily limited to, water delivery and drainage mains and pipes and the installation of properly working meters in a functioning and workmanlike condition" [and the] "duty to inspect all components of the water delivery system as installed, upgraded and maintained to ensure that those components, including but not limited to water mains and meters, were functioning properly as intended. [Siemens] accordingly held and holds an ordinary duty of care to the [customers of the City water and sewer authority]."

… Siemens knew or should have known that the deficient performance of its obligations to Plaintiffs and all [of the City's water-sewer customers] would foreseeably result in the interruption of water services and in the inaccurate overbilling to [customers] without effective recourse to said [customers] for delivery of water and sewer services. Despite this knowledge, [Siemens] negligently breached its duty of ordinary care owed to Plaintiffs.  As a proximate result of [Siemens'] tortious and negligent breach, Plaintiffs have suffered direct and foreseeable damages, including but not limited to foreseeable economic losses in the form of inaccurate overbillings and the cost and expense of disputing and resolving said inaccurate overbillings as recited herein.  Plaintiffs have further incurred proximate and foreseeable damages in the form of unreasonable interruptions to the provision of necessary water services that would not have occurred but for [Siemens'] negligent breach of its ordinary duty of care.

The central focus of plaintiffs' complaint is Siemens' installation of water meters which, according to plaintiffs' allegations, were defective.  Plaintiffs argue that Siemens owed them a common law duty to use reasonable care in the performance of its contractual obligations, including, specifically, its duty to install properly functioning water meters (including the

necessary software).  They allege that Siemens breached this duty by installing defective water meters (including software). Under Mississippi law, however, there is no recovery for pure economic loss in claims based on a defective product.  See State Farm Mut. Auto. Ins. Co. v. Ford Motor Co., 736 So. 2d 384, 387 (Miss. Ct. App. 1999) ("a plaintiff who suffers only economic loss as the result of a defective product may have no recovery in strict liability or negligence").

In addition to their allegations regarding the defective water meters, plaintiffs' complaint contains a couple of references to Siemens' "failure to perform services regarding the repair and upgrade of the water infrastructure intended to or having the effect of improving delivery of water and sewer services to residents of the City of Jackson" or "to address critical infrastructure failings in breach of its contractual obligations to repair and update the City's water and sewer system", as a result of which they allege "the City of Jackson has continued to suffer multiple catastrophic water failures, including water and sewer main breaks. . . ."  The contract contains numerous pages detailing Siemens' varying obligations with respect to numerous discrete aspects (e.g., a water treatment plant and certain wells, water towers, pipes, etc.) of the City's vast water delivery system.  Some of those duties include inspection and/or repair (or recommendation for repair)

and/or maintenance.  Yet there is nothing in the complaint to suggest in what respect Siemens failed to perform some duty under the contract.  Plaintiffs have not stated a cognizable claim for relief based on any failure by Siemens with respect to the water delivery system.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555, 557, 127 S. Ct. 1955) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").  Moreover, plaintiffs do not contend that Siemens' actions created any risk of harm to them.  Rather, they charge that Siemens' failures – whatever those failures may have been – failed to alleviate an existing risk of harm.  But for the contract, however, Siemens had no such duty.  Under Mississippi law, "the breach of a contract (whether described as "negligent" or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law.  There must be a duty of care 'fixed by law and independent of the contract.'"  <u>Clausell v. Bourque</u>, 158 So. 3d 384, 391 (Miss. Ct. App. 2015) (quoting <u>Hazell Mach. Co. v. Shahan</u>, 249 Miss. 301, 317, 161 So. 2d 618, 624 (1964)).

Conclusion

Based on the foregoing, it is ordered that Siemens' motion to dismiss is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 2nd day of June, 2020.


/s/Tom S. Lee_____
UNITED STATES DISTRICT JUDGE